# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES D. MEYER, individually, and on )
behalf of a group of similarly situated )
individuals, )
        Plaintiff, )
         )
 v. )  Civil Action No. 03-602
         )
CUNA MUTUAL GROUP, )
        Defendant. )

## MEMORANDUM OPINION

CONTI, District Judge.

Pending before the court is a motion for class certification (Doc. No. 30) filed pursuant to

Federal Rule of Civil Procedure 23(b)(3) in the above-captioned civil action by James D. Meyer

("plaintiff" or "Meyer").  Plaintiff seeks class certification for persons who purchased disability

insurance issued in the state of Pennsylvania from the defendant CUNA Mutual Group (the

"defendant" or "CUNA") pursuant to policies containing a particular definition of "Total

Disability" and whose claims for disability benefits were allegedly wrongfully denied after those

persons had received disability benefits pursuant to the policy for approximately a twelve-month

period.[1]

On December 16, 2004, the court held a class certification hearing.  On February 25,

2005, the plaintiff submitted a proposed trial plan (Doc. No. 47), the defendant submitted a

---

[1]See class definition infra Part I for a more precise description of the class.

response to the proposed trial plan (Doc. No. 46), and the parties submitted proposed findings of fact and conclusions of law (Doc. No. 49).

Pursuant to Federal Rule of Civil Procedure 52, this court makes the following findings of fact and conclusions of law.

## I. CLASS DESCRIPTION

Plaintiff sought in his amended complaint the certification of a nationwide class.  Plaintiff seeks in his motion for class certification, however, the certification of a state-wide class limited to the Commonwealth of Pennsylvania.  Plaintiff seeks certification of a class defined as follows:

> All persons who purchased disability insurance issued in Pennsylvania from the defendant CUNA Mutual Group, or its subsidiaries, which policies contain the definition of total disability including the following material language: "After the first twelve consecutive months of disability, the definition changes and requires the Member to be unable to perform any of the duties of his occupation, or any occupation for which he is reasonably qualified", [sic] to the extent that such individuals were determined by the defendant to be not able to perform all of the duties of his or her occupation, but were determined by the defendant to be capable of sufficient physical activity that the defendant decided that they were no longer eligible for total benefits under the defendant's interpretation of the subject policy.

Plaintiff's and Defendant's Proposed Findings of Fact and Conclusions of Law ("Joint Filing") at 2 (citing Plaintiff's Brief in Support of Motion for Class Certification ("Pl.'s Br.") at 8).

## II. FINDINGS OF FACT

### A. Background Facts

1.    On February 24, 1999, plaintiff purchased credit disability insurance pursuant to a group policy (the "policy") issued by defendant CUNA to URE Federal Credit Union (the "credit union") in connection with the financing by the credit union of an automobile purchase made by plaintiff.  Joint Filing, Agreed Findings of Fact ("AFF") ¶3.

2.     The policy provided that, in the event plaintiff became totally disabled, defendant would make payments on the loan to the credit union on plaintiff's behalf.  AFF ¶6 (citing Group Credit Insurance Policy at 4).

3.     The policy contained a definition of "Total Disability" that provided:

during the first 12 consecutive months of disability means that a member is not able to perform substantially all of the duties of his occupation on the date his disability commenced because of a medically determined sickness or accidental bodily injury.  After the first 12 consecutive months of disability, the definition changes and requires the member to be unable to perform any of the duties of his occupation or any occupation for which he is reasonably qualified by education, training or experience.

AFF ¶7 (citing Group Credit Insurance Policy at 1).

4.     This policy was approved by the Pennsylvania Insurance Department, as required by Pennsylvania law, before being sold to plaintiff.  AFF ¶8.

5.     The policy at issue—including the language defining total disability—resulted from defendant's efforts to modify language in its policies during the 1980s and to use "plain language" in drafting its policies.  Pl.'s Br., Ex. 8, Deposition of Diane Konz ("Konz. Dep.") at 14-18.  Diane Konz, defendant's representative, testified:

Q:     Okay. Now, in changing whatever that prior not-plain language policy was to this plain language policy, do you recall whether nor not any changes were made to the words describing total disability?

A:      We re-cast the definition to simply make it – to use easier words to understand.

Q:     Okay. And was the reason for doing that at that time the fact the insurance commissions were requesting plain language be used?

A:     Yes.

> Q:     And in this particular instance at that point in time was the
>         Pennsylvania Insurance Commission requesting plain
>         language be used?
>
> A:     Not at that time.
>
> Q:     Was that something you anticipated coming down
>         the road?
>
> A:     Yes.

Konz Dep. at 18.

6.     Ms. Konz testified in her deposition that she worked with a team at CUNA that drafted insurance contracts, submitted them to state regulators, and worked with the regulators to gain approval. Konz Dep. at 6-7. Ms. Konz testified that the drafting team included the manager of claims, the manager of underwriting, the manager of accounting, an actuary, and herself on behalf of the government relations and regulatory compliance group. Id. Ms. Konz testified that she drafted the language of the policy at issue during CUNA's efforts to modify policies to contain plain language. Konz Dep. at 21. Defendant asserts that the policy was drafted by a group, whereas plaintiff asserts that the policy was drafted by Ms. Konz, but reviewed by a group. See Defendant's Proposed Findings of Fact ("DFF") ¶2 and Plaintiff's Response thereto.

7.     Ms. Konz is a high school graduate without a formal education in law. Konz Dep. at 9. Ms. Konz testified that she cannot recall ever reading any legal cases dealing with interpretation of insurance contracts. Konz Dep. at 10. Ms. Konz was trained on-the-job, in-house, by defendant CUNA. Konz Dep. at 9-10. This policy was Ms. Konz's first opportunity to participate as a member of a drafting team from start to finish on a policy. Konz Dep. at 15.

8.     Plaintiff obtained a loan in the face amount of $19,838.44 and purchased a credit disability insurance policy with respect to that loan.  The policy was effective on February 24, 1999 and the premium for the policy was $1,230.00.  AFF ¶4.

9.     Plaintiff worked as a brakeman and conductor for Union Railroad for approximately 31 years.  AFF ¶2.

10.     On May 27, 2000, plaintiff suffered an injury at work while moving a train from one yard to another.  AFF ¶5, 9.

11.     As a result of the injury plaintiff was diagnosed with a herniated cervical disc with radiculopathy, leading to surgical discectomy.  AFF ¶10.

12.     Plaintiff sued his employer Union Railroad as a result of this incident, alleging that Union Railroad was responsible for his injuries because the equipment he was using at the time he was injured was defective.  AFF ¶11.  Plaintiff received a jury verdict in this lawsuit in the amount of $600,000.00.  AFF ¶12.  This jury verdict was vacated by an appellate court in September 2004.  AFF ¶13.

13.     In connection with this injury, plaintiff filed a claim for disability benefits under the policy at issue in this lawsuit.  AFF ¶14.

14.     In response to plaintiff's claim, CUNA began to pay plaintiff disability benefits.  AFF ¶15.  CUNA made its first payment of disability benefits to plaintiff on August 2, 2000 for the period of July 7, 2000 through July 27, 2000.  Id.

15.     The definition of "Total Disability" in the policy defines "Total Disability" during the first twelve consecutive months of disability differently from "Total Disability" during the time period thereafter.  See AFF ¶7.  The policy defines "Total Disability" during the first twelve

5

consecutive months of disability to mean "that a member is not able to perform substantially all of the duties of his occupation on the date his disability commenced because of a medically determined sickness or accidental bodily injury." Id. The policy states that the definition of "Total Disability" during the time period thereafter "changes and requires the member to be unable to perform any of the duties of his occupation or any occupation for which he is reasonably qualified by education, training or experience." Id.

16.     CUNA paid plaintiff disability benefits for the period between July 7, 2000, and July 7, 2001, pursuant to the definition of "Total Disability" that governed the first twelve months of disability because for that period CUNA determined that plaintiff was totally disabled according to that definition.  AFF ¶ 16.

17.     CUNA paid plaintiff disability benefits for the period between July 8, [2001][2] through November 24, 2002, pursuant to CUNA's interpretation of the definition of "Total Disability" that governed the time period after twelve months had passed from the date the disability commenced because for that period CUNA determined that plaintiff was totally disabled according to that definition.  AFF ¶ 17; AFF ¶30.

**B. Medical Evaluations**

18.     During the time period that CUNA paid benefits to plaintiff under the policy, plaintiff was treated by several physicians.  AFF ¶18.

---

[2] The Agreed Findings of Fact state that CUNA continued to pay benefits to plaintiff "from July 8, **2000** through November 24, 2002, pursuant to the second sentence of the definition of total disability." The court, however, infers that the parties meant to state "from July 8, **2001** through November 24, 2002." AFF ¶17 (emphasis added).

19.    During this period, plaintiff saw Dr. Antoin Munirji on a monthly basis for an extended period of time.  AFF ¶19.  In conjunction with each visit, Dr. Munirji completed two different forms relating to plaintiff's disability status:  an internal office form used at Dr. Munirji's office (the "Munirji form") and a form provided by CUNA to Dr. Munirji (the "CUNA form").  AFF ¶¶ 21, 23.

20.    The Munirji form contained the question:  "Can patient return to his/her pre-injury job without restrictions?"  The question was followed by spaces to mark "Yes" and/or "No." AFF ¶22.

21.    The CUNA form contained the question:  "Has patient been released to return to work?"  The question was followed by spaces to mark "Yes" and/or "No."  AFF ¶23.

22.    In order to complete the certification forms, Dr. Munirji tested plaintiff's strength and range of motion, and recorded these results.  AFF ¶24.

23.    On several occasions physicians authorized plaintiff to return to work in a sedentary, light, or medium duty capacity.  AFF ¶25.

24.    For example, on November 13, 2000, Dr. Munirji submitted a claim form to CUNA indicating that plaintiff had as of October 11, 2000, regained the ability to return to work subject to light duty restrictions.  Munirji Dep. at 12-14, Ex. 3 at 2.  See DFF ¶18 and Plaintiff's Response thereto.  On December 5, 2000, Dr. Munirji submitted a claim form to CUNA indicating again that plaintiff had regained the ability to return to work subject to light duty restrictions as of October 11, 2000.  Munirji Dep, Ex. 3 at 4.

25.    CUNA representative Tarry Blanke testified in her deposition that Dr. Levin had submitted a certification to CUNA indicating that plaintiff could return to light duty work in

7

some capacity as of June 8, 2000. DFF ¶16 (citing Blanke Dep. at 45). (Dr. Levin's report, Ex. 7 to Blanke's deposition, does not appear in the record.)

26.     During plaintiff's deposition he was questioned about a report written by Dr. Talbott which apparently indicated Dr. Talbot had stated that plaintiff was capable of full time light employment, as opposed to returning to plaintiff's occupation as a conductor / brakeman. DFF ¶17 (citing Pl. Dep. at 92-94). (Dr. Talbott's report, part of Ex. 7 to plaintiff's deposition, does not appear in the record.).

27.     Plaintiff believed that as of October 25, 2000 he was capable of performing sedentary or light work on a full time basis. AFF ¶26.

28.      Later, on May 3, 2002, Dr. Munirji indicated that plaintiff was capable of performing modified light duties at work, so long as he did no above-shoulder work and no lifting over 10-15 pounds. AFF ¶27. In December 2002, Dr. Munirji informed CUNA that plaintiff was capable of performing modified light duties at work, so long as he did no above-shoulder work and no lifting over 10-15 pounds. AFF ¶28. On December 10, 2002, Dr. Munirji submitted a form to CUNA and indicated that plaintiff was capable of performing "modified light duty." AFF ¶29.

29.     Dr. Munirji's report of December 31, 2002, however, demonstrates that though plaintiff was capable of performing modified light duties, plaintiff continued to suffer effects of his injury that prevented him from returning to his time-of-injury occupation. PFF ¶2. The report indicates, for example, that plaintiff was "totally disabled from performing his own occupation" and that Dr. Munirji expects either "no change" or "unknown," rather than "improvement" or "deterioration," regarding plaintiff's injury. Pl.'s Br., Ex. 6 at 1. In addition,

Dr. Munirji testified in his deposition that in the years since 2002, plaintiff's physical condition has not significantly improved and that plaintiff remained unable to perform substantially all of the activities of his prior occupation as a conductor for Union Railroad.  PFF ¶3, 5.

30.    Although several physicians authorized plaintiff at various times after his disabling injury to return to working in some capacity subject to light or medium duty restrictions, there is no indication in the record that any physician certified that after the disabling injury plaintiff could perform all of the duties of his time-of-injury occupation—conductor / brakeman at Union Railroad.

## C. Vocational / Employment Evaluations

31.    During the time period that CUNA paid benefits to plaintiff under the policy, plaintiff participated in two vocational/employment evaluations.  AFF ¶31.

32.    In late 2001, plaintiff's surgeon, Dr. El-Kadi, recommended plaintiff for a vocational evaluation in late 2001.  AFF ¶32.  This evaluation was performed by Mr. Matey, Director of Physical Therapy at Rehab Plus.  Id.  The results of this evaluation are detailed in a report (the "Matey Report") dated November 29, 2001.  AFF ¶33.  Mr. Matey concluded that plaintiff could work at a job with "medium duty" requirements, but due to incomplete information about the specific physical requirements of plaintiff's railroad employment, Mr. Matey could not determine whether plaintiff could return to his railroad employment.  Id.  Mr. Matey reported, however, among other things, that he "fe[lt] less than confident that return to full duty would be advised at this time" and that "[i]f prior position is unavailable [he] fe[lt] [plaintiff]'s abilities suggest he could return [to] medium duty work at this time with below

weight limits recommended."  Appendix in Support of CUNA's Memorandum in Opposition to

Plaintiff's Motion for Class Certification ("Def. App."), Pl.'s Dep., Ex. 2, Matey Report at 1.

33.    In 2002, counsel for plaintiff referred plaintiff to Charles Cohen, Ph.D., a licensed

psychologist/vocational expert, for a vocational evaluation in 2002.  AFF ¶35.  The results of this

evaluation are detailed in a report (the "Cohen Report") dated September 30, 2002.  Id.  Dr.

Cohen concluded, among other things, that "[plaintiff] has a loss of earnings capacity associated

with his inability to perform his previous job on the railroad."  Def. App., Pl.'s Dep., Ex. 1,

Cohen Report at 8.

34.    The vocational/employment evaluations contained conclusions that plaintiff was

capable of some light or medium work duty, even if he could not return to his original job.  DFF

¶26 (citing Pl.'s Dep., Ex. 10 & 11).  Mr. Matey concluded that plaintiff could work at a job with

"medium duty" requirements.  Pl.'s Dep., Ex. 10.  Dr. Cohen concluded that though plaintiff

could no longer perform his job as conductor/brakeman and his skills are not transferable to other

work, he may have been able to secure employment in some other occupation such as retail

sports equipment sales.  Pl.'s Dep., Ex. 11.

**D. Termination of Benefits**

35.    CUNA paid plaintiff benefits under the policy until November 24, 2002.  AFF

¶¶30-33, 37.

36.    On or about January 27, 2003, CUNA informed plaintiff by letter that he was no

longer eligible for benefits under the policy.  AFF ¶36.  In the letter plaintiff was informed that,

though CUNA had processed his claim for the period September 25, 2000, through November

24, 2002, it was terminating his benefits under the policy.  The letter explained in pertinent part:

Based on information obtained, no additional benefits may be extended at this time.

The information obtained indicated you're capable of modified light duty work. This, along with other information contained in your claim file, indicates that you are no longer unable to perform any occupation. Therefore, your claim has been closed.

The Credit Disability Insurance contract contains a definition of total disability. According to this definition, total disability during the initial 12consecutive [sic] months of disability means you are not able to perform the duties of your occupation. After the initial 12 consecutive months of disability, the definition changes and states that you must be disabled from performing any occupation for which you are reasonably qualified by education, training, or experience.

Def. App., Blanke Affidavit, Ex. A (Letter from Carolyn J. Frye to James D. Meyer) (the "January 27, 2003 letter").

37.    The January 27, 2003 letter is a form letter sent by CUNA to disability claimants (1) to whom CUNA had paid twelve consecutive months of benefits under a credit disability policy, and (2) for whom CUNA had received information indicating that the claimant was capable of returning to work in some capacity. AFF ¶38.

38.    As of the date CUNA responded to an interrogatory (interrogatory number four) served by plaintiff, CUNA believed as best as can be determined that approximately 1,545 claims fell into a category for Pennsylvania residents from April 29, 1997 to April 29, 2003, which is the statute of limitations period for the putative class in this case. The category referred to was for insureds who were insured under policies containing the language at issue in this case whose benefits were terminated after CUNA determined that the insured was capable of sufficient physical ability—although not enough to perform the duties of the insured's occupation—to be no longer eligible for benefits. The data was limited to Pennsylvania residents because insurance

certificates with this definition of disability were only sold to Pennsylvania residents.  See AFF ¶¶39-40.[3]

     39.    CUNA's practice is to include in a letter to an insured denying benefits all of the bases upon which benefits are being denied because CUNA understands that is expected and required under the Fair Claims Practices Act.  Blanke Dep. at 67.

**E. Plaintiff's Current Employment Status**

     40.    At the time of plaintiff's deposition he could perform all of the verbal requirements of his job as brakeman/conductor, but could not perform all of the physical requirements of his job as brakeman/conductor.  AFF ¶42.

     41.    Plaintiff testified during his deposition that the rules promulgated by his union, the United Transportation Union (the "union") prevented him from taking a different job with his employer.  AFF ¶43.  Plaintiff explained that brakeman/conductors do not have light duty work, his agreement with the union prevented him from switching from brakeman/conductor to some

---

[3] CUNA's designated representative for the purposes of testifying to claims procedures, Tarry Blanke, testified in her deposition that she received a request from the in-house legal department to assist them in identifying relevant claims, that she participated in ascertaining the number of claims by contacting the IT Department and giving them parameters for identifying the claims, and that she passed on this information to the legal department.  Blanke Dep. at 26-27.  This process apparently led to defendant's answer to interrogatory number four.  In an affidavit submitted with defendant's opposition to the motion for class certification, Ms. Blanke further explained that (1) this number was ascertained by determining from computer records that the same form of letter sent to plaintiff was sent to 1,545 Pennsylvania residents; (2) it was not determined by defendant why the persons who had received this form of letter stopped receiving benefits; and (3) in sending the letter, CUNA did not make any determination of whether each recipient of the letter could have returned to their pre-injury job without restriction.  Plaintiff objects that this Affidavit submitted after the close of discovery and days prior to argument is untimely, contradicts defendant's answer to interrogatory number four, and cannot vitiate that answer.  The court need not resolve that objection because the answer to interrogatory number four is sufficient to meet plaintiff's burden on the numerosity requirement for a class certification at this stage of the proceedings.

other position such as being a clerk, and that in his 31 years of experience at the railroad he had never had any other job than brakeman/conductor.  Pl.'s Dep. at 73-74.

42.     Plaintiff testified during his deposition that since becoming disabled he had not discussed job training possibilities with his union,  considered attending any kind of job training or education courses to prepare himself for a new occupation, or looked for or applied for a new job.  AFF ¶¶44-45.

43.     Plaintiff has the ability to perform tasks associated with some occupations other than brakeman/conductor.  AFF ¶46.

44.     Plaintiff receives a monthly disability pension from the Railroad Retirement Board in the amount of $2,230.00.  AFF ¶47.  In June 2004, plaintiff received a lump sum "US Carnegie" pension payment in the amount of approximately $167,000.00.  AFF ¶48; Pl.'s Dep. at 21-22.

**F. Plaintiff's Adequacy as Class Representative**

45.     Plaintiff has expressed his willingness to serve as class representative, and to vigorously prosecute this case on behalf of the entire class.  PFF ¶22; Amended Complaint ¶¶11,15-16.

46.     Because defendant has represented that it sold this policy only in Pennsylvania, there are no variations in state law which create conflicts of interest between members of the proposed class.  PFF ¶24.

47.     On April 16, 2004, the court entered a case management order providing that class certification discovery close on August 23, 2004, and that plaintiff's motion for class certification be filed by September 14, 2004.  AFF ¶58.

13

48.     On July 12, July 19, and August 20, 2004, counsel for defendant requested dates for deposing plaintiff.  AFF ¶59.

49.     Plaintiff's deposition was scheduled for the week of September 20, 2004, but was thereafter postponed because plaintiff's counsel was unavailable.   AFF ¶60.

50.     The parties filed a joint motion to amend the case management order (Doc. No. 28) on or about September 13, 2004.  The court, upon consideration of the parties' joint motion, amended the case management order on September 15, 2004, and ordered that class certification discovery be concluded by October 8, 2004, and that plaintiff's motion for class certification be filed by October 29, 2004.  AFF ¶61.

51.     Plaintiff's deposition was re-scheduled for September 30, 2004.  AFF ¶62.

52.     Several days before plaintiff's scheduled deposition, an appellate court vacated plaintiff's $600,000.00 jury verdict against his employer.  AFF ¶63.  Because of the appellate court's opinion, plaintiff informed his attorney that he believed that "the judicial system did not work" and that "he was not willing on that date to participate in it."  AFF ¶64.  Plaintiff stated that he had lost faith in the legal system and was unwilling to be deposed.  AFF ¶65.  Plaintiff at no time claimed that he was ill or had an unforeseen conflict with the scheduled deposition. Instead, plaintiff refused to attend it.  AFF ¶66.  The day before the scheduled deposition plaintiff's counsel informed defendant's counsel that plaintiff refused to attend the September 30, 2004 deposition.  AFF ¶67.

53.     Defendant's counsel re-noticed plaintiff's deposition for October 5, 2004, three days before the close of class discovery, as a courtesy to plaintiff's counsel.  AFF ¶68.  Plaintiff's

counsel, however, was unable to secure plaintiff's attendance on October 5, 2004, and plaintiff

failed to appear at the October 5 deposition.  AFF ¶69.

54.   Class discovery closed, therefore, without defendant having an opportunity to

depose plaintiff.  AFF ¶70.

55.   Plaintiff sought and received an extension of the class discovery period and

plaintiff was deposed on October 28, 2004.  AFF ¶72.

56.   At his deposition plaintiff agreed that if a class representative exposed the members

of a putative class that he seeks to represent possibly to adverse consequences due to a failure to

abide by court rules that such conduct would not be in the best interests of the members of the

class.  AFF ¶73; Pl.'s Dep. at 17.

57.   Plaintiff asserts that there was no prejudice to any party and no harm done to the

class in light of the delay occasioned by the re-scheduling of plaintiff's deposition.  PFF ¶25.

58.   Plaintiff does not know the physical capabilities or level of education, training, and

experience of any member of the putative class.  AFF ¶49.

59.   At the time of his deposition plaintiff was unaware that a class representative is

expected to pay discovery and notice expenses inherent in all class action litigation, did not

expect to incur expenses in connection with the litigation, and indicated that at that time he was

unable to pay the potential expense of class notice or discovery in this action.  Pl.'s Dep. at 6.

60.   Plaintiff has arranged for costs and expenses of this matter to be contingently

advanced by plaintiff's counsel in the above-captioned civil action.  AFF ¶50.  Plaintiff avers that

the contingent fee agreement properly provides that plaintiff's counsel may advance the costs of

litigation, repayment of which is contingent on the outcome of the matter.  DFF ¶47 and

Plaintiff's Response thereto (citing Pennsylvania Rule of Professional Conduct 1.8(e)(I)).

61.    Plaintiff's proposed class counsel, Mark T. Coulter and D. Aaron Righn of Peirce,

Raimond and Coulter, P.C. have experience litigating class actions, including consumer cases,

and possess the resources to prosecute this case.  AFF ¶51.

**G. Issues Related to Administration of the Class Action**

62.    Were the class to be certified, plaintiff's trial plan asserts that a damages

determination would not be problematic and defendant's trial plan asserts that a damages

determination would be problematic.[4]

**III. Procedural Background**

1.    Plaintiff brings this action on his own behalf, and on behalf of similarly situated

individuals who were granted, but later denied, benefits under credit disability insurance policies

purchased from the defendant.  AFF ¶52-3; Amended Complaint (Doc. No. 21) at 1-3.

2.    Plaintiff's initial complaint (Doc. No. 1) sought certification of a nationwide class

based upon claims for breach of contract, breach of fiduciary duty, violation of the Pennsylvania

Unfair Trade Practices Act and Consumer Protection Law, and violation of Pennsylvania's bad

faith insurance statute.

3.    Defendant filed a motion to dismiss this complaint (Doc. No. 6) which the court

granted in part as to the breach of fiduciary duty claim and denied in part as to the remaining

claims in its memorandum order of February 11, 2004 (Doc. No. 12), noting that plaintiff had

---

[4]No facts relevant to the size of the claims of putative class members were referred to by either party.

conceded in his response to the motion to dismiss that count three of the complaint fails to state a claim as to breach of fiduciary duty.

4.     Plaintiff subsequently filed an amended complaint (Doc. No. 21) with leave of the court re-alleging claims for breach of contract, breach of fiduciary duty, and violation of the Pennsylvania Bad Faith statute, and further alleging violations of the Unfair Trade Practices Act and Consumer Protection laws of all 50 states and the District of Columbia and violation of the covenant of good faith and fair dealing under common laws of all 50 states, the District of Columbia, and federal common law.  AFF ¶55.

5.     Defendant filed a motion to dismiss this complaint (Doc. No. 22) which the court in its memorandum order of December 20, 2004 (Doc. No. 41) granted as to count three, the breach of fiduciary duty claim, granted in part as to count four, the unfair trade practices claim, and denied without prejudice as to count six, the breach of the implied covenant of good faith and fair dealing claim.  AFF ¶56.  The court granted in part the motion to dismiss as to count four, the unfair trade practices and consumer protection claim, dismissing that claim to the extent that it purported to state a claim for violations of unfair trade practices of all 50 states and the District of Columbia as well as the federal statute prohibiting unfair trade, and permitting plaintiff to maintain such a claim to the extent the claim alleges violations of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law.  AFF ¶57.  The court denied defendant's motion to dismiss count six without prejudice to defendant's rights to revisit the issue upon a more fully developed record in a motion for summary judgment.  Id.

6.     Plaintiff asserts that defendant's sworn discovery responses have indicated that the policy language at issue in this case was used only in Pennsylvania.  PFF ¶21.  Plaintiff seeks,

17

therefore, in his motion for class certification creation of a class limited to Pennsylvania participants.  Id.  In the event that subsequent discovery should demonstrate that defendant's discovery responses were erroneous regarding the use of this clause only in Pennsylvania, whether by intent or omission, plaintiff reserves the right to request the court to reconsider the scope of the proposed class.  Id.

**IV. CONCLUSIONS OF LAW**

1.  To be certified, a class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed.R.Civ.P. 23(a).  If the Rule 23(a) requirements are met, the court must then find that the class fits within one of the three categories of class actions set forth in Federal Rule of Civil Procedure 23(b).  In Re Community Bank of Northern Virginia, 418 F.3d 277, 302 (3d Cir. 2005).  See also Chiang v. Veneman, 385 F.3d 256, 264 (3d Cir. 2004); In Re LifeUSA, 242 F.3d 136, 143 (3d Cir. 2001); Georgine v. Amchem. Prods., Inc., 83 F.3d 610, 624 (3d Cir. 1996), aff'd. Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).

2.  The proponent of class certification has the burden of proving each of the prerequisites of a class action under Rule 23(a) and that the class fits within one of the three categories of class actions set forth in Rule 23(b).  Chiang, 385 F.3d at 264.  The court notes, however, that it is not necessary for plaintiff to establish the merits of his case at the certification stage, and that in determining whether the class will be certified, the substantive allegations of the complaint must be taken as true.  Chiang, 385 F.3d at 262 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974)).  In deciding a motion for class certification, the court

18

must be satisfied "after a rigorous analysis" that all the requirements for class certification are

met.  General Telephone Co. v. Falcon, 457 U.S. 147, 160 (1982).  As the United States Court of

Appeals for the Third Circuit has recently made clear, failure to follow the procedures required

before approving a class action is an abuse of discretion.  In Re Community Bank of Northern

Virginia, 418 F.3d 277 (3d Cir. 2005) (settlement-only class).

**A. The Class Definition**

3.    Plaintiff proposes class certification for a group of individuals who purchased

disability benefits policies in Pennsylvania from defendant containing a certain definition of

"Total Disability" which provided that:

> during the first 12 consecutive months of disability means that a member is not
> able to perform substantially all of the duties of his occupation on the date his
> disability commenced because of a medically determined sickness or accidental
> bodily injury.  After the first 12 consecutive months of disability, the definition
> changes and requires the member to be unable to perform any of the duties of his
> occupation or any occupation for which he is reasonably qualified by education,
> training or experience.

AFF ¶7 (citing Group Credit Insurance Policy at 1).  Plaintiff seeks certification of a class

defined as follows:

> All persons who purchased disability insurance issued in Pennsylvania from the
> defendant CUNA Mutual Group, or its subsidiaries, which policies contain the
> definition of total disability including the following material language: "After the
> first twelve consecutive months of disability, the definition changes and requires
> the Member to be unable to perform any of the duties of his occupation, or any
> occupation for which he is reasonably qualified", [sic] to the extent that such
> individuals were determined by the defendant to be not able to perform all of the
> duties of his or her occupation, but were determined by the defendant to be
> capable of sufficient physical activity that the defendant decided that they were no
> longer eligible for total benefits under the defendant's interpretation of the subject
> policy.

4.    The crux of plaintiff's case is that the definition of "Total Disability" in defendant's disability insurance policies is ambiguous on its face.  Specifically, plaintiff points to the language used to describe the second period of disability (the period after the first twelve consecutive months of disability has passed) as problematic.

5.    Plaintiff's proposed class definition is predicated on the definition of "Total Disability" in the disability insurance policies sold in Pennsylvania by defendant.  Plaintiff proposes a class of claimants who, like plaintiff, were initially approved for total disability benefits but whose benefits were subsequently terminated based upon a determination by defendant that the claimant, while "not able to substantially perform all of the duties of his occupation" as referenced in the initial definition of the total disability provision, nevertheless was capable of sufficient physical activity that defendant deemed the insured no longer eligible for total disability benefits under defendant's interpretation of the policy provisions.

6.    Plaintiff avers that this class contains approximately 1,545 claimants based upon defendant's response to interrogatory number four, which indicated that "[a]s best as can be determined at the present time, CUNA believes that approximately 1,545 claims fall in to [sic] this category for Pennsylvania residents from April 29, 1997 to April 29, 2003, which is the statute of limitations period for the putative Class in this case."

7.    Plaintiff maintains that, using the subject language in the policy sold to plaintiff, defendant identified approximately 1,545 individuals who remained occupationally disabled, and yet were terminated from receipt of their benefits after a twelve-month period (or thereafter) based upon defendant's interpretation of the policy provisions which plaintiff contends entitled those claimants to continued coverage.  Plaintiff seeks to use the policy language itself to define

20

and limit the class.  Plaintiff argues that the proposed class definition is sufficiently clear to encompass an ascertainable group of individuals who share common and predominate issues of law and fact, a group that is too large reasonably to anticipate individual prosecution of the case, and a group that lends itself to management as a class action.

8.   Defendant argues, however, that (1) plaintiff's class definition bears no relation to his claims; (2) the class is not readily ascertainable; (3) the class may not include persons whose claims are barred by the applicable statute of limitations; and (4) plaintiff has no standing to represent disability claimants who purchased different policies than he did.  The court addresses these concerns in turn.

**1. Relationship of Class Definition to Plaintiff's Claims**

9.   Defendant argues that it is inappropriate for plaintiff's class definition to refer to a determination with respect to "all of the duties" of one's occupation, which defendant submits is the standard for benefits during the first twelve months of disability.  Defendant argues that plaintiff's claims relate to a denial of benefits subject to the standard for benefits during the period after twelve months of benefits.  The court cannot agree with defendant's position. Though the claims advanced by plaintiff relate specifically to the ambiguity inherent in the definition of "Total Disability" during the period after twelve months of coverage, there is nothing fundamentally defective about a class definition that requires looking to both the first and second parts of the definition to ascertain the class.  Defining the class to include those claimants who were first given benefits subject to the first part of the definition and then denied benefits subject to the second part of the definition in fact narrows the group to those who are

similarly situated as the plaintiff and who may have a claim if plaintiff succeeds in establishing that defendant's interpretation of the policy language was incorrect.

**2. Class is Not Readily Ascertainable**

10.    Defendant argues that the class is not readily ascertainable because it is not precise, objective, and presently ascertainable without detailed person-by-person analysis to determine who falls within the class.

11.    Defendant is correct that a clear class definition is critically important because it identifies the persons who are entitled to relief, bound by a final judgment, and entitled to notice in a Rule 23(b)(3) action like this one.  "A class must be clearly defined and only members can be legally bound by settlements or judgments in the class action." In re School Asbestos Litigation, 56 F.3d 515, 519 (3d Cir. 1995) (citations omitted).

12.    Defendant cites authority from other circuits to the effect that class proponents must propose a class definition which is "precise, objective, and presently ascertainable."  See, e.g., Neumont v. Monroe County, 198 F.R.D. 554, 557 (S.D. Fla. 2000) (for a class definition to be viable, class membership must be capable of ascertainment under objective standards); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (class definition should be "precise, objective and presently ascertainable").

13.    Further, defendant argues that if it is necessary to engage in a person-by-person analysis to determine who falls within a proposed class, the composition of the class cannot be ascertained through reasonable effort, and class certification must be denied. See, e.g., Crosby v. Social Sec. Admin., 796 F.2d 576, 580 (1st Cir. 1986) (denying certification where definition of class made "class members impossible to identify prior to individualized fact-finding and

litigation").  Defendant argues that, here, the members of the putative class can only be identified through detailed person-by-person inquiry, and not through a reasonable effort, because plaintiff's proposed class consists of individuals who were unable to perform substantially all of the duties of their pre-injury occupation, but were denied benefits because they could work in another occupation for which they were reasonably qualified by education, training or experience.  According to defendant, there is no way to determine whether individuals meet this requirement without an individualized review of the claims file for each of the 1,545 claimants plaintiff contends are members of the putative class.  Defendant points out, further, that there is no guarantee that each claim file will contain the factual information necessary to make these determinations, and to the extent that such information is not present in any file, additional investigation would be necessary.

14.    Defendant fails to address head on in its opposition brief, however, the fact that the 1,545 figure came from defendant, not plaintiff.  Defendant certified in its answer to plaintiff's interrogatory that approximately 1,545 claimants in the state of Pennsylvania during the applicable time period fell into the category described by plaintiff.  It is inappropriate for defendant to now protest that this number is inaccurate, or the criteria for determining it not clear, precise, and objective.  In addition, some amount of individualized inquiry may, but does not necessarily, defeat class certification on some or all issues.  See Chiang, 385 F.3d 256 at 267 (Becker, J.) ("We note in this regard that courts commonly use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication—or, perhaps more realistically, settlement."); Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.) ("[I]t may be that if and when the defendants are

23

determined to have violated the law separate proceedings of some character will be required to determine the entitlements of the individual class members to relief.").  This issue will be addressed more thoroughly below.

**3. Claims Barred by Statute of Limitations**

15.    Defendant argues that the class may not include persons whose claims are barred by the applicable statute of limitations.  While plaintiff's class definition does not explicitly refer to a time period, plaintiff asserts that the class is made up of the approximately 1,545 claims identified by defendant in its answer to interrogatory number four, in which defendant explained "these 1545 claims fall into this category from Pennsylvania residents from April 29, 1997 to April 29, 2003, which is the statute of limitation [sic] period for the putative class in this case." The 1,545 claims, therefore, by defendant's own determination, do not include claims barred by the applicable statute of limitations.

**4. Standing**

16.    Defendant argues that plaintiff has no standing to represent disability claimants who purchased different policies than he did.  As a threshold matter, individual standing is a prerequisite for the maintenance of all actions, including class actions. Osgood v. Harrah's Entertainment, Inc., 202 F.R.D. 115, 120-21 (D.N.J. 2001) (citations omitted).  While there is no additional standing requirement for a plaintiff who seeks to represent a class, questions relating to Article III standing, however, frequently overlap and are sometimes confused with the criteria required for class certification embodied in Federal Rule of Civil Procedure 23(a).  Id.

17.    Though defendant cites the constitutional standard for standing in its opposition brief, defendant actually makes a standing argument that should be addressed pursuant to the

criteria contained in Rule 23.  That is, Article III standing requires(1) the plaintiff must have

suffered an injury in fact; (2) there must be a causal connection between the injury and the

conduct complained of—the injury has to be fairly traceable to the challenged action of the

defendant and not the result of the independent action of some third party not before the court;

and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a

favorable decision.  Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-176 (3d

Cir. 2000); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 484-85

(3d Cir.1998).  See also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Further,

constitutional standing implicates prudential considerations that overlap, but extend beyond, the

inquiry under Article III.   The United States Court of Appeals for the Third Circuit has

summarized those prudential principles as follows:  (1) the plaintiff generally must assert his own

legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties; (2) even when the plaintiff has alleged redressable injury sufficient to meet the

requirements of Article III, the federal courts will not adjudicate abstract questions of wide public

significance which amount to generalized grievances pervasively shared and most appropriately

addressed in the respective branches; and (3) the plaintiff's complaint must fall within the zone of

interests to be protected or regulated by the statute or constitutional guarantee in questions.

Society Hill Towers Owners' Ass'n, 210 F.3d at 177-178 (citations omitted)

18.    The court in Osgood explained the relationship between standing and the Rule 23

criteria in a prospective class action:

> Though there is no additional standing requirement for the plaintiff who seeks to
> represent a class, a proper class action requires a similarity of claims between the
> named plaintiffs and the class members. **This similarity of claims is tested not**

**by principles of standing, but by the application of the Rule 23(a)(3) criteria.**
If a class action is proper, then by definition the class representative's claims will
be typical of the class. Thus the class plaintiff's individual standing, linked to his
or her asserted claim, becomes automatically linked to the class claim. Having
standing which a class representative shares with the members of a class is
another way of saying that the class representative is a proper party to raise a
particular issue common to the class. The commonness of issues is an express
requirement of Rule 23 and is an attribute of the issue involved, rather than a
threshold characteristic of whether the issue meets the constitutional case or
controversy test. **Accordingly, a plaintiff who meets individual standing
requirements possesses [standing] in the constitutional sense, and whether
the plaintiff may represent the rights of others depends on the application of
Rule 23 tests in the case of a class action[.]**

202 F.R.D. at 120-21 (citing Herbert B. Newberg & Alba Conte, Newberg On Class
Actions § 2.05 (3d ed.1992)) (emphasis added).

19.    Defendant's argument that it is improper for plaintiff to represent CUNA

policyholders who may have purchased different policies than plaintiff did, therefore, is an

argument that goes to the similarity of claims between the named plaintiff and the class

members, and the similarity of claims is tested not by principles of constitutional standing, but by

the application of the Rule 23(a)(3) criteria.  Id.

20.    Defendant's standing argument must fail, in addition, if all of the policies contain

the same material language defining "Total Disability."  This question is disputed to the extent

that defendant, who produced the figure of 1,545 claims, now contends that "there is no evidence

that the definition is the same in the policies for all members of the putative class."  Joint Filing,

Defendant's Proposed Conclusions of Law ("DCL") ¶25; see also Def. App., Blanke Affidavit at

2-3.  Defendant's position, however, relies on the post-discovery affidavit of defendant's

representative, Ms. Blanke, and may contradict defendant's answer during discovery to plaintiff's

interrogatory.  There is no evidence that this new information was furnished to plaintiff as a

26

timely supplement to defendant's response to plaintiff's interrogatory as required by Federal Rule of Civil Procedure 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."). Under Federal Rule of Civil Procedure 37(c) there can be consequences to failing to amend a prior response to discovery as required by Rule 26(e)(2). Fed.R.Civ.Proc. 37(c)(1). The figure of 1,545 represents, at the very least, that some nontrivial number of claimants in the ballpark of 1,545 were represented by defendant during discovery to fall within the class of claimants that plaintiff seeks to identify.

21. The class definition is sufficiently precise, objective, and presently ascertainable to submit to class certification if the other prerequisites of a class action are met. In addition, if upon further information the parties discover that the class definition must be modified, the court has the discretion to do so. See Rule 23(c)(1)(C) ("An order under Rule 23(c)(1) may be altered or amended before final judgment.").

**B. Rule 23(a) Prerequisites to a Class Action**

22. To be certified, a class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed.R.Civ.P. 23(a). Rule 23(a) specifically provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

27

23.    The United States Court of Appeals for the Third Circuit Court has explained that

the requirements of Rule 23(a) are meant to ensure that class action treatment is necessary and

efficient and that it is fair to absentees under the particular circumstances of a case.  <u>Baby Neal</u>,

43 F.3d at 55 (Becker, J.).  Numerosity addresses the first of these concerns (i.e., the necessity of

class action treatment) while commonality, typicality, and adequacy address whether the class

action can be maintained in a fair and efficient manner.  <u>Id.</u>

**1. Numerosity**

24.    Rule 23(a)'s numerosity requirement focuses on the necessity of class action

treatment where the class is so numerous that joinder of all members is impracticable.  <u>See</u>

Fed.R.Civ.P. 23(a).  The proposed class here consists of approximately 1,545 claimants.[5]  While

no number definitively establishes numerosity, a class as large as this one is sufficiently

numerous for joinder to be impracticable.  As the United States Court of Appeals for the Third

Circuit has explained:

> On the subject of how many is enough, Professor Moore has written "While the
> attitude taken towards a given number may vary, each opinion reflects a practical
> judgment on the particular facts of the case. Thus no hard and fast number rule
> can or should be stated, since 'numerosity' is tied to 'impracticability' of joinder
> under the specific circumstances. Nevertheless, some general tendencies can be
> observed. While there are exceptions, numbers under twenty-one have generally
> been held to be too few. Numbers between twenty-one and forty have evoked
> mixed responses and again, while there are exceptions, numbers in excess of forty,

---

[5]Defendant's response to plaintiff's interrogatory is sufficient to meet plaintiff's burden
on this matter.  If the information furnished in the response is erroneous and the numerosity
requirement is not met, then the court has the authority to decertify the class pursuant to Rule
23(c)(1)(C) ("An order under Rule 23(c)(1) may be altered or amended before final judgment.").
As previously noted, there may be issues that defendant will need to address under Rules 26(e)(1)
and 37(c).

particularly those exceeding one hundred or one thousand have sustained the requirement."

Weiss v. York Hosp., 745 F.2d 786, 808 n.5 (3d Cir.1984) (citing 3B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 23.05[1], at 23-150 (2d ed. 1982) (footnotes omitted)).  Defendant argues, however, that plaintiff has failed to establish that joinder is impracticable, and that plaintiff improperly rests only on the estimated number of claims and asks the court to infer impracticability without engaging in any analysis that joinder is impracticable.

25.    While defendant is correct that a class proponent cannot rely on bare assertions of numerosity and conclusory allegations that joinder is impractical, plaintiff bases his position that joinder is impracticable on the number of claims reported by CUNA to fall into the category that plaintiff seeks to certify.  The court, looking at the totality of the circumstances before it, finds that the numerosity requirement set forth in Rule 23(a) is satisfied.  Though plaintiff could have been more effusive in its argument that joinder of the approximately 1,545 claims is impracticable, there is sufficient basis in the record for the court to find that the class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a).  As noted by defendant, practicability of joinder depends on a number of factors, including: the size of the class, ease of identifying members and determining addresses, ease of service on members if joined, geographical dispersion and whether proposed members of the class would be able to pursue remedies on an individual basis.  Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 74 (D.N.J. 1993) (citations omitted).  Here, the court's determination that joinder is impracticable rests primarily on the size of the class.  Because here the number of potential class members is so large as to make joinder difficult if not impossible, and because the size of

29

the individual claims may make it unlikely that the claims would be prosecuted on their own,[6] the court determines that the joinder is sufficiently impracticable and the numerosity requirement is satisfied.  See id.

**2. Commonality**

26.    The commonality requirement set forth in Rule 23(a) is satisfied if the named plaintiff shares at least one question of fact or law with the grievances of the prospective class. Baby Neal, 43 F.3d at 56 (citations omitted).  As the United States Court of Appeals for the Third Circuit has noted, the commonality requirement "is not a high bar."  Chiang, 385 F.3d at 265. See also Baby Neal, 43 F.3d at 56 ("Because the requirement may be satisfied by a single common issue, it is easily met. . . .").  Furthermore, and relevant to the harm alleged in this case, "class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice."  Id. (emphasis in original) (citations omitted).

27.    Here, plaintiff alleges that the entire class, by its definition, was (1) subject to the same legal harm—namely, denial of disability benefits by defendant, and more specifically, denial of disability benefits under the same allegedly ambiguous policy language which forms the basis of plaintiff's complaint; and (2) limited to those individuals who were determined by

---

[6] While the record is not sufficient at this point for the court to determine conclusively that the size of the individual claims is so small that claimants are unlikely to prosecute individual claims on their own, the size of the named plaintiff's claim—considering that the face amount of the debt for which the credit disability policy was issued, $19,838.44, and the court not being apprised by either party that other lawsuits have been filed support an inference that the size of the individual claims *may* make it unlikely that the claims would be prosecuted on their own.

defendant to be physically unable to resume their prior occupation, yet were considered by defendant to be ineligible for continuing disability benefits under identical policy language.

28.    Defendant does not directly contest commonality in its memorandum in opposition or in its proposed conclusions of law contained in the joint filing.  Defendant argues, however, that plaintiff failed to show that common issues of fact or law predominate as required by Rule 23(b).  This court addresses commonality here and will address predominance below.

29.    The court finds that the named plaintiff shares at least one question of fact or law with the grievances of the prospective class.  The court notes, in particular, that all class members had their disability benefits terminated by defendant subject to defendant's interpretation of the same material language defining "Total Disability" which defendant used in its disability benefits policies in Pennsylvania.  Further, this very language provides the basis for the named plaintiff's case.  For this reason, it is clear that at least one common issue of law binds the class members: Was the policy language ambiguous?  And if so, a second common issue of law would bind the class members: What are the legal implications of the ambiguity?  These issues may well be addressed at the merits stage of the case.  The court finds at this stage, however, that for the purposes of deciding the certification motion at least one common question of law is shared by plaintiff and the members of the putative class.  Upon this finding, the court holds that the commonality requirement of Rule 23(a) is met.

**3. Typicality**

30.    Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).  It has been noted that "[t]he concepts of commonality and typicality are broadly defined and tend to merge" and both

seek to assure that the interests of absentees will be fairly and adequately represented.  Baby Neal, 43 F.3d at 56 (citing 7A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1764, at 247 (1986)).  See also In Re Community Bank, 418 F.3d at 303.  Neither commonality nor typicality, however, mandates that all putative class members share identical claims.  In Re Community Bank, 418 F.3d at 303; Baby Neal, 43 F.3d at 56.

 31. Moreover, despite their similarity in seeking to protect the interests of absentees, commonality and typicality are distinct requirements.  Baby Neal, 43 F.3d at 56.  Where commonality evaluates the sufficiency of the class, typicality evaluates the sufficiency of the named plaintiff.  Id. (citing Hassine v. Jeffes, 846 F.2d 169, 177 n.4 (3d Cir. 1988).[7]

 32. Typicality assesses whether the named plaintiff has incentives that are aligned with those of absent class members so as to assure that the absentees' interests will be fairly represented by the named plaintiff.  Baby Neal, 43 F.3d at 57.  In other words, "[t]he typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the named absentees."  Id.

---

[7]The court in Baby Neal noted further that:

> We underscore at the outset that neither [typicality nor commonality] mandates that all putative class members share identical claims, and that factual differences among the claims of the putative class members do not defeat certification.

Id. at 56.  See also Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) (certifying securities fraud class action despite differences in injuries); Troutman v. Cohen, 661 F.Supp. 802, 811 (E.D.Pa. 1987) (certifying subclass of 1,973 nursing home patients challenging reductions in levels of nursing care designations over commonality and typicality objections "because it is not the unique facts of the individual appeals which give rise to this action but rather the decision making process").

Typicality, it has been explained, entails an inquiry whether the named plaintiff's individual

circumstances are markedly different, or the legal theory upon which the named plaintiff's claims

are based is different from one upon which the claims of other class members will be based.  Id.

(citing Hassine, 846 F.2d at 177; Eisenberg, 766 F.2d at 786).

     33.    Inquiries related to typicality ask whether the plaintiff's individual circumstances

are different from that of absentees and whether plaintiff's legal theory is different from that of

absentees.  Yet, as the United States Court of Appeals for the Third Circuit explained with

respect to typicality in Baby Neal, even claims marked by factual differences in injury, but in

which the same course of conduct gives rise to claims based on the same legal theory, are not

necessarily rendered atypical by virtue of those factual differences:

> Commentators have noted that cases challenging **the same unlawful conduct**
> which affects both the named plaintiffs and the putative class usually satisfy the
> typicality requirement **irrespective of the varying fact patterns underlying the
> individual claims**. . . . Actions requesting declaratory and injunctive relief to
> remedy conduct directed at the class clearly fit this mold.
>
> [F]actual differences will not render a claim atypical if the claim arises from the
> **same event or practice or course of conduct** that gives rise to the claims of the
> class members, and if it is **based on the same legal theory**.. . . . Indeed, even
> relatively pronounced factual differences will generally not preclude a finding of
> typicality where there is a strong similarity of legal theories.  Where an action
> challenges a policy or practice, the named plaintiffs suffering one specific injury
> from the practice can represent a class suffering other injuries, so long as all the
> injuries are shown to result from the practice. . . .

43 F.3d at 58 (internal citations and quotations omitted) (emphasis added).

     34.    Here, plaintiff argues Rule 23(a)'s typicality requirement is satisfied for much the

same reasons that the commonality requirement is satisfied: (1) the class definition identifies a

group of disability benefits claimants, including plaintiff, whose disability benefits were

terminated subject to defendant's interpretation of the same policy language, the very language

which is at the heart of the merits of plaintiff's case; and (2) the class definition is limited to

individuals whose factual circumstances, though potentially different in multiple respects, are

similar in that they all stand similarly before defendant as claimants who were determined to be

unable to resume their prior occupation, yet considered by defendant to be ineligible for

continuing benefits due to defendant's interpretation of identical policy language defining "Total

Disability."

     35.    Defendant argues, to the contrary, that plaintiff failed to demonstrate that his claims

are typical of the claims of the members of the putative class.  According to defendant, plaintiff's

claims are "typical" of other members of the class only if proof of plaintiff's factual

circumstances will also automatically prove the claims of all other class members.  In Liberty

Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 74 (D.N.J. 1993), relied upon by

defendant, the court stated:  "[G]iven [representative]'s highly individualized circumstances,

[representative]'s claims are not typical of the class at large. . . . 'If proof of the representatives'

claims would not necessarily prove all the proposed class members' claims, the representative'

claims are not typical of the proposed members' claims.'" (citations omitted).  The court in

Liberty Lincoln Mercury, however, focused on the "the lack of commonality and highly

individualized facts among proposed class members" and stated that, in those circumstances, "no

proposed Dealer could be said to have claims 'typical' of the entire class."  Id.  In Liberty Lincoln

Mercury the district court also recognized the standard for typicality:

> Even when there are actual differences between the representative parties and the
> rest of the class, a proposed class will meet Rule 23(a)(3) requirements if "the
> claim arises from the same events or practice or course of conduct that gives rise

to the claims of the class members, and if it is based on the same legal theory." Grasty v. Amalgamated Clothing and Textile Wkrs. Union, etc., 828 F.2d 123, 130 (3d Cir.1987) (citing NEWBERG, CLASS ACTIONS, § 3.15), cert. denied, 484 U.S. 1042 (1988); see also Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir.1988). . . . As the Circuit has indicated: **"Rule 23 does not require that the representative plaintiffs have endured precisely the same injuries that have been sustained by class members, only that the harm complained of be common to the class."** Hassine, 846 F.2d at 177 (emphasis omitted).

Id. at 77 (some internal citations omitted).[8]

36.     Here, the harm complained of is common to the class. Both plaintiff and the members of the putative class, taking as true the substantive allegations of the complaint, were subject to the same course of conduct by defendant that gives rise to claims that are based on the same legal theory. See Chiang, 385 F.3d at 262 (substantive allegations of the complaint are taken as true for purposes of deciding the class certification motion). See also Baby Neal, 43 F.3d at 58 ("[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."). Both plaintiff and the members of the putative class were allegedly denied disability benefits based upon identical language in defendant's disability

---

[8] With respect to typicality, defendant also relies on Parke v. First Reliance Std. Life. Ins. Co., 368 F.3d 999 (8th Cir. 2004). In Parke, the United States Court of Appeals for the Eighth Circuit affirmed the district court's denial of class certification in a disability benefits case where the named plaintiff claimed that the insurer in that case engaged in a practice of awarding long-term disability benefits to a claimant, then terminating or suspending them without asking for or receiving evidence that the claimant's condition had changed. Id. at 1004. The court of appeals determined that denial of certification was appropriate in that case because the propriety of terminating any claimant's benefits remained "dependent on the facts of the individual case" and "the question whether a breach occurred remains a case-by-case determination." Id. at 1004-05. That decision, however, bears only superficial similarity to this one. Though both deal with the termination of disability benefits, Parke did not involve a common issue of contract interpretation as this matter does; rather, in Parke, liability for termination of benefits was based upon highly individualized inquiry into each claimant's case. Therefore, Parke is distinguishable and does not change the analysis herein.

insurance policies—namely, defendant's definition of "Total Disability."  The typicality requirement of Rule 23(a)(3) is, therefore, satisfied in this case.

**4. Adequacy**

37.    Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a)(4).  The adequacy requirement, thus, addresses the sufficiency of the named plaintiff.  As the United States Court of Appeals for the Third Circuit explained, "[a]dequacy of representation assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class."  Baby Neal, 43 F.3d at 55.

38.    The adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees,' and it tests the qualifications of the counsel to represent the class.'"  In Re Community Bank, 418 F.3d at 303 (3d Cir. 2005) (quoting In Re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995) ("G.M. Trucks")).  Defendant cites Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1987) and Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977), cert. denied, 434 U.S. 1086 (1978), to the effect that there are three required components to adequacy: (1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel; and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class.  The court in Hassine stated that "[t]he inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the

claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." Id. (citations omitted).  While the court in Hassine did not specifically identify these factors as "three required components of adequacy," as does defendant, this court will examine nonetheless all of the factors listed above from Hassine as well as the factors identified in In Re Community Bank under two prongs: (1) the adequacy of the named plaintiff; and (2) the adequacy of plaintiff's counsel.

39.     Regarding the first prong of the adequacy analysis—adequacy of the named plaintiff—the court will examine (i) whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; and (ii) whether the named plaintiff's interests are sufficiently aligned with the absentees' interests.  First, with respect to plaintiff's ability and incentive, plaintiff asserts that plaintiff has expressed his willingness to serve as class representative and to prosecute vigorously this case.  Defendant, however, points to facts in the record that challenge plaintiff's ability and incentive.  Defendant argues that (1) plaintiff's alleged lack of engagement in the suit, demonstrated by his alleged insufficient knowledge of litigation generally and the litigation of this case; (2) plaintiff's failure to comply with the court's case management order and Federal Rule of Civil Procedure 30 by failing to participate in his scheduled deposition before the close of fact discovery; and (3) plaintiff's failure to agree to shoulder the financial burden of class representation, all support a finding that plaintiff is inadequate as a class representative in this civil action.

40.     The court notes, as an initial matter, that plaintiff has the burden of proving that the prerequisites for a class action are met, and the initial burden to adduce evidence to support a

finding that he will fairly and adequately protect the interests of the class are met.  As to

adequacy, however, "in most cases, adequate representation presumptions are usually invoked in

the absence of contrary evidence by the party opposing the class."  ALBA CONTE & HERBERT

NEWBERG, NEWBERG ON CLASS ACTIONS § 7:24 (4th ed. 2002).  More specifically:

> On the issue of no conflict with the class, one of the tests for adequate
> representation, the presumption fairly arises because of the difficulty of proving
> negative facts.  On the issue of professional competence of counsel for the class
> representative, the presumption fairly arises that all members of the bar in good
> standing are competent.  Finally, on the issue of intent to prosecute the litigation
> vigorously, the favorable presumption arises because the test involves future
> conduct of persons, which cannot be prejudged adversely.

Id. (citations omitted). Further,

> **[i]f there are any doubts about adequate representation or potential conflicts,**
> **they should be resolved in favor of upholding the class, subject to later**
> **possible reconsideration**, or subclasses might be created initially.  Alternatively,
> notice should be sent to the class inviting others to come in as additional class
> representatives.

Id. (citations omitted) (emphasis added).

41.    Regarding plaintiff's ability and incentive to prosecute the case, the court finds that

with respect to plaintiff's knowledge of this litigation and plaintiff's failure to agree to shoulder

the financial burden of class representation, and in light of the authority above regarding

resolving doubts as to intent to prosecute the litigation vigorously in favor of plaintiff, any

potential defects with the named plaintiff that interfere with the fair and efficient prosecution of

the action will be cured either by the competence of plaintiff's counsel, who the parties agree are

adequate counsel to prosecute the action and who have agreed to advance the expenses of

litigation, or by reconsideration of the named plaintiff as class representative.  If the need arises,

the court can reconsider the representative's adequacy and even consider a replacement representative.

42.     Regarding plaintiff's failure to appear for his scheduled deposition before the close of fact discovery, on the record before the court, plaintiff's failure, while not condoned, is not indicative of his current intent to prosecute the case vigorously in light of the totality of the circumstances at the time of the deposition, i.e. the disappointment occasioned by the vacating of his $600,000.00 jury verdict during the time period in question.  The parties ultimately were able to cooperate in a relatively short time frame— approximately thirty days—and schedule and take plaintiff's deposition.  No serious prejudice to the class resulted from the delay, albeit the delay was upsetting to the other party.

43.     For the above reasons, with respect to this first prong of the adequacy analysis, the court finds the proposed plaintiff adequate.

44.     Regarding the second prong of the adequacy analysis, whether plaintiff's counsel is qualified to represent the class, the parties agree that plaintiff's proposed class counsel, Mark T. Coulter and D. Aaron Righn of Peirce, Raimond and Coulter, P.C., have experience litigating class actions, including consumer cases, and possess the resources to prosecute this case.  See AFF ¶51.  With respect to this second prong of the adequacy analysis, the court finds the proposed class counsel adequate.

45.     Given the reasons set forth above, the adequacy requirement of Rule 23(a) is satisfied in this case.

**C. Certification of a Class Action Pursuant to Rule 23(b)(3)**

46.     In deciding a motion for class certification, if the Rule 23(a) requirements are met,

the court must then find that the class fits within one of the three categories of class actions set

forth in Federal Rule of Civil Procedure 23(b).  In Re Community Bank, 418 F.3d at 302;

Chiang, 385 F.3d at 264; In Re LifeUSA, 242 F.3d at 143; Baby Neal, 43 F.3d at 55.

47.     This action invokes Rule 23(b)(3), which provides:

> An action may be maintained as a class action if the prerequisites of [Rule 23(a)]
> are satisfied, and in addition:
>        . . .
>  (3) the court finds that the questions of law or fact common to the members of the
> class predominate over any questions affecting only individual members, and that
> a class action is superior to other available methods for the fair and efficient
> adjudication of the controversy. The matters pertinent to the findings include: (A)
> the interest of members of the class in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already commenced by or against members of the class; (C) the
> desirability or undesirability of concentrating the litigation of the claims in the
> particular forum; (D) the difficulties likely to be encountered in the management
> of a class action.

Fed.R.Civ.P. 23(b)(3).  The court addresses whether common questions of fact or law

predominate over individual questions and whether the class action device is the superior method

of adjudication of the controversy in turn.

**1. Common Questions of Fact or Law Predominate Over Individual Questions**

48.     The predominance inquiry focuses on whether the proposed class is sufficiently

cohesive to warrant adjudication by representation.  In Re Community Bank, 418 F.3d at 308-09.

"A proper predominance inquiry 'trains on the legal or factual questions that qualify each

member's case as a genuine controversy, questions that preexist any settlement.'" Id. (citing

Amchem, 521 U.S. at 623-24).   In this vein, the predominance inquiry is related to, but more

40

strenuous than, the commonality requirement set forth in Rule 23(a).  Chiang, 385 F.3d at 273

("[B]ecause the Rule 23(b)(3) predominance requirements incorporate the commonality

requirement of 23(a), it is possible that 'even if Rule 23(a)'s commonality requirement is

satisfied. . . the predominance criterion is far more demanding.'") (quoting Amchem, 521 U.S. at

623-24).  The predominance requirement is that "the common issues must constitute a

'significant part' of the individual cases."  Id.  (citations omitted).  The predominance

requirement's relation to Rule 23(a)'s typicality requirement has been noted as well.  See In Re

Community Bank, 418 F.3d at 308-09 ("[A] predominance analysis 'is similar to the requirement

of Rule 23(a)(3) that claims or defenses of the named representative must be 'typical of the

claims [or] defenses of the class.'") (quoting Amchem, 521 U.S. at 623-24).

   49. Here, plaintiff's claims arise out of defendant's interpretation of specific language

used by defendant in its disability benefits policies—namely, language defining "Total

Disability."  The class is defined to include only those individuals who were denied benefits

pursuant to this language.  The crux of plaintiff's case at the merits stage will be a determination

whether this language is ambiguous, and if so, what legal consequences flow from the ambiguity.

At this stage, the court refrains from making any determination as to the merits of this claim.

The court, however, recognizes for the purpose of deciding the class certification motion that

determining whether contract language is ambiguous is a question of law for the court.  In re

Montgomery Ward & Co., Inc., 428 F.3d 154, 161 (3d Cir. 2005).  If an agreement is

unambiguous, the court can declare its meaning as a matter of law.  Id. (citations omitted).  If an

agreement is ambiguous, its meaning is a question of fact.  Id.  Further, if identical language was

material in the denial of disability benefits to all of the members of the putative class, then on the

question of interpreting the language, the court finds that common questions of law and fact predominate over individual ones.

50.     Further, the fact that some individualized inquiry may be required with respect to other issues in the litigation, or with respect to damages, does not impugn the court's ability to certify a class for the purpose of deciding the issue of contract interpretation which underlies plaintiff's claims and similar claims of absentee members of the class.  As noted above, some amount of individualized inquiry can, but does not necessarily, defeat class certification on some or all issues.  See Chiang, 385 F.3d 256 at 267 (Becker, J.) ("We note in this regard that courts commonly use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication–or, perhaps more realistically, settlement."); Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.) ("[I]t may be that if and when the defendants are determined to have violated the law separate proceedings of some character will be required to determine the entitlements of the individual class members to relief.").  Courts have flexibility to certify a class as to certain issues pursuant to Rule 23(c)(4)(A), which provides that "[w]hen appropriate an action may be brought or maintained as a class action with respect to particular issues."  The United States Court of Appeals for the Third Circuit has long recognized and affirmed this flexibility.  See, e.g., Chiang, 385 F.3d 256 at 267, 273; Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977).

51.     Courts have recognized, particularly with respect to damages, that the necessity to engage in some individual inquiry at the damages stage does not necessarily defeat certifying a class for the purposes of determining liability over issues that are properly considered as part of a

class action.  See In Re Community Bank, 418 F.3d at 305-6 (3d Cir. 2005).  As the court

explained in Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004):

> Often . . . there is a big difference from the standpoint of manageability between
> the liability and remedy phases of a class action. . . . [I]t may be that if and when
> the defendants are determined to have violated the law separate proceedings of
> some character will be required to determine the entitlements of the individual
> class members to relief. . . . . That prospect need not defeat class treatment of the
> question whether the defendants violated [the law].

Id. (internal citations omitted).  The court also noted:

> Once [the question of liability] is answered, if it is answered in favor of the class,
> a global settlement . . . will be a natural and appropriate sequel. And if there is no
> settlement, that won't be the end of the world.  Rule 23 allows district courts to
> devise imaginative solutions to problems created by the presence in a class action
> litigation of individual damages issues.  Those solutions include "(1) bifurcating
> liability and damage trials with the same or different juries; (2) appointing a
> magistrate judge or special master to preside over individual damages
> proceedings; (3) decertifying the class after the liability trial and providing notice
> to class members concerning how they may proceed to prove damages; (4)
> creating subclasses; or (5) altering or amending the class."

Id.  (Posner, J.) (quoting In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 141

(2d Cir. 2001).

52.    In this case, liability issues that hinge on contract interpretation and language

ambiguity will be decided based upon questions of law or fact common to the members of the

class.  A recent opinion from the United States District Court for the Eastern District of New

York certifying a breach of contract class action is instructive.  In Steinberg v. Nationwide

Mutual Insurance Co., 224 F.R.D. 67 (E.D.N.Y. 2004), the court noted that adjudication of the

claims at issue would require the court to interpret key terms, definitions, and contractual

provisions that were substantively similar if not identical in all of the defendant's relevant

insurance contracts, and that these contracts could be considered uniform or "form contracts" for

the purposes of the litigation.  The court noted that "in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified." Id. (internal quotations and citations omitted).  This case, like Steinberg, involves common questions of law or fact that hinge upon an interpretation of the language defining "Total Disability" in defendant's disability benefits contracts.  Though defendant argues that the application of "Total Disability," no matter how it is interpreted, necessarily requires individualized determinations for each member of the putative class, the court finds that, at least as to the issues of interpreting the contract language and whether the language is ambiguous, common issues of fact and law predominate over any individualized inquiries.  See In Re Montgomery Ward & Co., Inc., 428 F.3d 154 (3d Cir. 2005) (explaining that determining whether contract language is ambiguous is a question of law for the court; if an agreement is unambiguous, the court can declare its meaning as a matter of law; if an agreement is ambiguous, its meaning is a question of fact); Emerson Radio Corp. v. Orion Sales Inc., 253 F.3d 159, 164 (3d Cir. 2001).

53.    The court thus finds that questions of law or fact common to the members of the class predominate over questions affecting only individual members.  In particular, the court finds that the question of contract interpretation that underlies plaintiff's claims is a question common to all of the class members who were denied continuing disability benefits based upon defendant's interpretation of language used in the relevant policies.

**2. Class Action is Superior Method of Adjudication of the Controversy**

54.    As explained by the United States Court of Appeals for the Third Circuit most recently in In Re Community Bank, "[t]he superiority requirement asks a district court 'to

balance, in terms of fairness and efficiency, the merits of a class action against those of

"alternative methods" of adjudication.'" 418 F.3d at 277 (quoting Georgine v. Amchem Prods.,

Inc., 83 F.3d 610, 632 (3d Cir. 1996), aff'd, 521 U.S. 591 (1997)).  Matters pertinent to this

inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution
> or defense of separate actions; (B) the extent and nature of any litigation
> concerning the controversy already commenced by or against members of the
> class; (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; [and] (D) the difficulties likely to be encountered
> in the management of a class action.

Fed.R.Civ.P. 23(b).

55.    Here, considering the interest of members of the class in individually controlling

the prosecution or defense of separate actions, and balancing the merits of the class action device

with respect to efficiency and fairness with individual prosecutions, the court determines that the

interests of the members of the class weigh in favor of certification because the costs of

prosecution and the potentially numerous number of class members inform the court's

determination that the class action is the superior method.  Considering the extent and nature of

any litigation concerning the controversy already commenced by or against members of the class,

the court is only aware of this civil action and determines that this factor weighs neither in favor

of nor against certification.  Considering the desirability or undesirability of concentrating the

litigation of the claims in the particular forum, the court notes that the policy was issued only in

Pennsylvania and that no other alternative forum readily presents itself as more desirable than

this one.  Considering the difficulties likely to be encountered in the management of a class

action, the court is sensitive to both the efficiency gains and losses that are potentially

45

attributable to certifying the class.  On the one hand, certification should bring substantial efficiency gains because the multiple claims, approximately 1,545 based on the record developed thus far, could be litigated in one forum, at one time.  On the other hand, the court is aware of the administrative burdens that maintaining and litigating a class action, especially one pursuant to Rule 23(b)(3) which requires adherence to the Rule's notice provisions, can cause.  On balance, efficiency concerns weigh in favor of class certification.

56.    Reviewing the plaintiff's proposed trial plan and the defendant's response, the court notes that plaintiff asserts in its filing that the core issue of defendant's liability relating to the insurance contracts in issue is one that readily lends itself to class disposition, and that if liability on this issue can be resolved as a class action, then liability can be resolved at the summary judgment stage.  That is, plaintiff's trial plan envisions class certification at least as to the question of contract interpretation.  A motion for summary judgment as to that issue may well impact the possibility of settlement.  As to damages, plaintiff envisions that if the class is certified and a decision favorable to the class is obtained with respect to the contract interpretation issues, the court could then determine the appropriate manner in which to proceed with respect to damages issues.  Defendant objects to plaintiff's trial plan on the grounds that a trial plan should outline and demonstrate how a case could be tried manageably on a class-wide basis, and that plaintiff's trial plan is deficient because it fails to address more than one manner in which the case may reasonably develop.  Defendant argues that individual determinations will be necessary not only at the damages phase, but also as part of the liability determination, based on defendant's position that *the application of* the definition of "Total Disability" will require individual interpretations.  Defendant argues further that if defendant is found liable at the

46

liability phase, the court will still have to determine the damages owed to each member of the class. Plaintiff, defendant argues, does not provide in his trial plan a specific formula or methodology for doing so, nor disclose how such data will be obtained. Defendant avers that, contrary to plaintiff's assumption that the facts necessary for damages calculations are readily available from defendant, in fact defendant does not maintain a database with the pertinent data.

57.    The court is satisfied that certification at this stage is appropriate. If the liability issue is determined unfavorably to the class then the case will be resolved. If the liability issue is determined in favor of the class, then the court may consider on a fully developed record whether to decertify the class or to take other appropriate action.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification (Doc. No. 30) is GRANTED. An appropriate Order follows.

## V. ORDER

AND NOW, this 25th day of January, 2006, upon consideration of plaintiff's motion for class certification (Doc. No. 30), all related submissions, and the hearing held on December 16, 2004, and in accordance with this court's findings of fact and conclusions of law set forth herein, IT IS HEREBY ORDERED that plaintiff's motion for class certification is GRANTED. The following class of plaintiffs shall be certified:

> All persons who purchased disability insurance issued in Pennsylvania from the defendant CUNA Mutual Group, or its subsidiaries, which policies contain the definition of total disability including the following material language: "After the first twelve consecutive months of disability, the definition changes and requires the Member to be unable to perform any of the duties of his occupation, or any occupation for which he is reasonably qualified", [sic] to the extent that such individuals were determined by the defendant to be not able to perform all of the

duties of his or her occupation, but were determined by the defendant to be capable of sufficient physical activity that the defendant decided that they were no longer eligible for total benefits under the defendant's interpretation of the subject policy.

IT IS FURTHER ORDERED that the class claims and issues shall be those set forth in the Amended Complaint (Doc. No. 21), and that the following shall serve as class counsel pursuant to Federal Rule of Civil Procedure 23(g):   Mark T. Coulter and D. Aaron Righn of Peirce, Raimond and Coulter, P.C.

IT IS FURTHER ORDERED that the parties shall promptly meet and confer with respect to a plan of class notice that complies with Rule 23(c)(2)(B) and directs to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, and which concisely and clearly states in plain, easily understood language:  (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, issues, or defenses, (4) that a class member may enter an appearance through counsel if the member so desires, (5) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and (6) the binding effect of a class judgment on class members under Rule 23(c)(3).  The parties shall submit a plan of class notice that complies with these requirements within twenty (20) days from the date of this Order.

By the court,


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:      Counsel of Record

48