# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES D. MEYER, individually, and on )
behalf of a group of similarly situated )
individuals, )
        Plaintiff, )
  )
 v. )  Civil Action No. 03-602
  )
CUNA MUTUAL GROUP, )
        Defendant. )

## <u>MEMORANDUM OPINION</u>

CONTI, District Judge.

      Pending before the court is a  motion for partial summary judgment filed in the above-caption ed civil action by plaintiff James D. Meyer ("plaintiff" or "Meyer"), and a motion for summary judgment filed by defendant CUNA Mutual Group ("defendant" or "CUNA").  Plaintiff brought this action on his own behalf, and on behalf of similarly situated individuals who were granted, but later denied, benefits under credit disability insurance policies purchased from defendant.  (Joint Statement of Material Facts for Plaintiff's motion for Partial Summary Judgment ("JF-P"), ¶ 5.).  Plaintiff filed a motion for partial summary judgment (Doc. No. 108) seeking the court's interpretation of a clause in an insurance contract defining "Total Disability." Defendant filed a motion for summary judgment (Doc. No. 141) seeking dismissal of all plaintiff's remaining claims: count two - breach of contract; count four - violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1, *et seq.* ("UTPCPL"); count five  - violation of Pennsylvania's bad faith insurance

statute, 42 Pa. Cons. Stat. Ann. § 8371 ("Section 8371"); and count six - breach of Pennsylvania's common law covenant of good faith and fair dealing.  After considering the submissions of the parties, the court will grant plaintiff's motion for partial summary judgment and grant in part and deny in part defendant's motion for summary judgment for the reasons set forth herein.

### *Procedural History*

Plaintiff's initial complaint (Doc. No. 1) sought certification of a nationwide class based upon claims for breach of contract, breach of fiduciary duty, violation of the UTPCPL, and violation of Pennsylvania's bad faith insurance statute.  Defendant filed a motion to dismiss that complaint (Doc. No. 6), which the court in its memorandum order of February 11, 2004, granted in part as to the breach of fiduciary duty claim and denied in part as to the remaining claims. (Doc. No. 12.)

Plaintiff subsequently filed an amended complaint (Doc. No. 21) with leave of the court realleging claims for breach of contract, breach of fiduciary duty, and violation of the Pennsylvania bad faith statute, and further alleging violations of unfair trade practice and consumer protection laws of all 50 states and the District of Columbia as well as violation of the covenant of good faith and fair dealing under the common laws of all 50 states, the District of Columbia, and federal common law.  (JF-P ¶ 8).

Defendant filed a motion to dismiss that complaint (Doc. No. 22) which the court in its memorandum order of December 20, 2004 (Doc. No. 41) granted as to count three, the breach of fiduciary duty claim, granted in part as to count four, the unfair trade practices claim, and

denied without prejudice as to count six, the breach of the implied covenant of good faith and fair dealing claim.  (JF-P ¶ 9.)  Specifically, with respect to count four, the unfair trade practices and consumer protection claims, the court dismissed that claim to the extent that it purported to state a claim for violations of unfair trade practices of all 50 states and the District of Columbia as well as the federal statute prohibiting unfair trade, and permitted plaintiff to maintain such a claim to the extent the claim alleges violations of the Pennsylvania UTPCPL.  (Id.)  The court denied defendant's motion to dismiss count six without prejudice to defendant's right to revisit the issue upon a fully developed record in a motion for summary judgment.  (Id.)

On January 25, 2006, this court granted plaintiff's motion for class certification.  The following class of plaintiffs was certified:

> All persons who purchased disability insurance issued in Pennsylvania from the defendant CUNA Mutual Group, or its subsidiaries, which policies contain the definition of total disability including the following material language: "After the first twelve consecutive months of disability, the definition changes and requires the Member to be unable to perform any of the duties of his occupation, or any occupation for which he is reasonably qualified", [sic] to the extent that such individuals were determined by the defendant to be not able to perform all of the duties of his or her occupation, but were determined by the defendant to be capable of sufficient physical activity that the defendant decided that they were no longer eligible for total benefits under the defendant's interpretation of the subject policy.

(Memorandum Opinion of January 25, 2006, Doc. No. 50 at 47-48.)

### *Factual Background*

On February 24, 1999, plaintiff purchased credit disability insurance pursuant to a group policy (the "policy") issued by defendant CUNA to URE Federal Credit Union (the "credit union") in connection with the financing by the credit union of an automobile purchase made by

plaintiff. (JF-P ¶ 16.)  The policy provided that, in the event plaintiff became totally disabled, defendant would make payments on the loan to the credit union on plaintiff's behalf.  (Id. at 17 (citing Group Credit Insurance Policy at 4).)  The policy contained a definition of "Total Disability" that provided:

> during the first 12 consecutive months of disability means that a member is not able to perform substantially all of the duties of his occupation on the date his disability commenced because of a medically determined sickness or accidental bodily injury.  After the first 12 consecutive months of disability, the definition changes and requires the member to be unable to perform any of the duties of his occupation or any occupation for which he is reasonably qualified by education, training or experience.

(Id. at  18 (citing Group Credit Insurance Policy at 1).)

This policy was approved by the Pennsylvania Insurance Department, as required by Pennsylvania law, before being sold to plaintiff.  (Joint Statement of Material Facts: Defendant's motion for summary judgment ("JF-D"), ¶ 40.)  The policy at issue - including the language defining total disability - resulted from defendant's efforts to modify language in its policies during the 1980s and to use "plain language" in drafting its policies.  (Deposition of Diane Konz ("Konz Dep.") at 14-18.)

Diane Konz ("Konz"), testified in her deposition that she worked with a team at CUNA that drafted insurance contracts, submitted them to state regulators, and worked with the regulators to gain approval.  (Konz Dep. at 6-7.)  Konz testified that the drafting team included the manager of claims, the manager of underwriting, the manager of accounting, an actuary, and herself on behalf of the government relations and regulatory compliance group.  (Id.)  Konz

testified that she drafted the language of the policy at issue during CUNA's efforts to modify policies to contain plain language.  (Konz Dep. at 21.)

Plaintiff obtained a loan in the face amount of $19,838.44 and purchased a credit disability insurance policy with respect to that loan.  The policy was effective on February 24, 1999, and the premium for the policy was $1,230.00.  (JF-D ¶ 7.)  Plaintiff worked as a brakeman and conductor for Union Railroad for approximately 31 years.  (JF-P ¶ 15.)  On May 27, 2000, plaintiff suffered an injury at work while moving a train from one yard to another.[1] (Id. at 19.)  In connection with this injury, plaintiff filed a claim for disability benefits under the policy at issue in this lawsuit.  (Id.)   In response to plaintiff's claim, CUNA began to pay plaintiff disability benefits.  (Id. at 24.)  CUNA made its first payment of disability benefits to plaintiff on August 2, 2000, for the period of July 7, 2000 through July 27, 2000.  (Id.)  CUNA paid plaintiff disability benefits for the period between July 7, 2000, and July 7, 2001, pursuant to the definition of "Total Disability" that governed the first twelve months of disability because for that period CUNA determined that plaintiff was totally disabled according to that definition. (Id. at 25.)  CUNA paid plaintiff disability benefits for the period between July 8, 2001 through November 24, 2002, pursuant to CUNA's interpretation of the definition of "Total Disability" that governed the time period after twelve months had passed from the date the disability commenced because for that period CUNA determined that plaintiff was totally disabled according to that definition.  (JF-P  ¶ 26.)

---

[1]Plaintiff sued his employer Union Railroad as a result of this incident, alleging that Union Railroad was responsible for his injuries because the equipment he was using at the time he was injured was defective.  (JF-P  ¶ 20.)  Plaintiff received a jury verdict in that lawsuit in the amount of $600,000.00.  (JF-P  ¶ 21.)  That jury verdict was vacated by an appellate court in September 2004.  (JF-P  ¶ 22.)

On or about January 27, 2003, CUNA informed plaintiff by letter that he was no longer eligible for benefits under the policy. (JF-P ¶ 27.) In the letter plaintiff was informed that, though CUNA had processed his claim for the period September 25, 2000 through November 24, 2002, it was terminating his benefits under the policy. The letter explained in pertinent part:

> Based on information obtained, no additional benefits may be extended at this time.
>
> The information obtained indicated you're capable of modified light duty work. This, along with other information contained in your claim file, indicates that you are no longer unable to perform any occupation. Therefore, your claim has been closed.
>
> The Credit Disability Insurance contract contains a definition of total disability. According to this definition, total disability during the initial 12consecutive [sic] months of disability means you are not able to perform the duties of your occupation. After the initial 12 consecutive months of disability, the definition changes and states that you must be disabled from performing any occupation for which you are reasonably qualified by education, training, or experience.

(Def. App., Blanke Aff., Ex. A (Letter from Carolyn J. Frye to James D. Meyer) (the "January 27, 2003 letter")). The January 27, 2003 letter was a form letter sent by CUNA to disability claimants (1) to whom CUNA had paid twelve consecutive months of benefits under a credit disability policy, and (2) for whom CUNA had received information indicating that the claimant was capable of returning to work in some capacity. (JF-P ¶ 28.)

Although several physicians authorized plaintiff at various times after his disabling injury to return to working in some capacity subject to light or medium duty restrictions, plaintiff was never cleared by any physician to return to his time-of-injury occupation as conductor/brakeman at Union Railroad. (JF-D ¶ 11.)

6

For class notice purposes, CUNA determined that 4,734 persons had received the benefit denial letter in question and potentially fit within the class definition.  The class notice was mailed to those persons.  (Affidavit of Dale Statz ("Statz Aff.").)  Of the 4,734 persons  who received the class notice, 176 returned to their pre-injury jobs, without restrictions (Statz Aff. ¶¶ 8(a)-9(a)), 1,530  persons submitted additional information, and had  the payment of credit disability benefit  payments reinstated until the underlying loan was  paid off (Statz Aff.  ¶¶ 8(b)-9(b)), and 51 persons had their credit disability claims closed due to their failure  to respond to requests for information from CUNA. (Statz Aff. ¶ 8(c)-9(c).)

Plaintiff received the claims files materials for all the potential class members from defendant.  (See plaintiff's amended supplemental responses to defendant's second set of requests for admissions ("Pl.'s Amend. Adm.").)  These files contain all the necessary materials to determine (1) which of these members should be included in the class, and (2) what their damages would be if liability is determined.  ( Id.)  Specifically, these files contain: the initial claim reports (including occupation and job description at time of disability);  medical records, functional capacity evaluations and doctors' reports submitted to determine disability; documentation of when a class member returned to work; monthly payments on loans, outstanding balance on the loans, balance at distribution, and duration of the loans.  (Id. ¶¶ 1-6.)

Plaintiff Meyer understood the definition of  "total disability" in the insurance contract to mean disabled from his time of injury job.  Meyer testified in his deposition as follows:

> Q:     And do you recall reviewing or looking at that definition of total
>        disability prior to finalizing your application and getting the loan on the
>        truck?

A:    I would have went over the whole thing before I signed it, the whole application.

Q:    And do you recall any discussion that you had with anybody at the credit union about the definition of total disability at any time prior to getting the loan?

A:    No.

Q:    What is your understanding today as to what the definition of total disability is in CUNA's insurance policy as it relates to you?

A:    Total disability would be me not able to perform the duties as my job as a brakeman or conductor under the agreement with Union Railroad Company.

***

Q:    Is that your understanding of the definition?

A:    And if I couldn't resume my, if I couldn't go back to doing my job that I was doing for 31 years on the railroad, that I was considered totally disabled from my job on the railroad.

Q:    As you understand it, is there any limitation in time as to how long CUNA is obligated to pay benefits under that definition?

A:      Under the total disability?

Q:      Yes, sir.

A:      I was under the impression if I became totally disabled that they would just assume responsibility for the loan.

                ***

Q:      Do you have any understanding as to whether there is any change to the definition of disability after 12 consecutive months of disability payments?

A:      [Looking at the definition of "total disability" on the insurance contract, pointed out to him by defense counsel] Well, if the first 12 months it's, that I'm not able to perform almost all my duties, and then under the, after the original, after the first 12 consecutive months it changes and requires me to perform any of the duties.  Did I just double talk here?  The first 12 months it's I'm required to be able to perform according to the --

Q:      Not be able to perform.

A:      Not be able to perform substantially all of them, and then under the last, the second one I'm not able to perform any of my duties as a brakeman or conductor.

(Deposition of James D. Meyer at 59-61, ("Meyer Dep."))

Plaintiff presented the claims files of several potential class members who had disagreements or complaints about CUNA's interpretation of "total disability" after twelve months.  Potential class member Jennifer Hall called CUNA on January 7, 2003, because she received a letter and did not understand the shifting nature of total disability.  (JF-P ¶ 50.)

Potential class member Richard E. Miller ("Miller") was the chief of police of Annville, Pennsylvania, and was injured when he slipped on ice getting out of his patrol car.  (JF-P ¶ 52.) There are several opinions in the file that he was permanently disabled from police work. (Id.)  A skills evaluation recommended vocational counseling for a  different, more sedentary, position. (Id.)  His benefits were terminated  under the any occupation standard. ( Id.)  Miller submitted a complaint to the Pennsylvania Attorney General and the Department of Insurance  ("DOI"), stating that he thought that what he purchased would cover him while he was disabled from his job, and last past twelve months.  (Id.)  Miller stated that CUNA's interpretation "does not really reflect its'[sic] promise or its'[sic] effective term and nature of the policy.  I believe that I was the victim of fraud and 'false advertising'." (Id. at Ex. S.)  Potential class member James Ferraro wrote a letter dated February 27, 2003, disagreeing with CUNA's decision to discontinue benefits after twelve months.  He was totally disabled from his job, but not from light duty work. (JF-P ¶ 53.)  Defendant's corporate representative, Dale Statz ("Statz"), testified that he witnessed claims examiners needing to explain this provision to other insureds in the past, and that he himself did so on numerous occasions.  (Statz Dep. at 67-68)

It is the industry standard to employ a shifting definition of "total disability" in credit insurance contracts that shifts from an "own occupation" standard to an "any occupation"

10

standard.  (See JF-D ¶¶ 23-27.)  The National Association of Insurance Commissioners ("NAIC")

adopted model language for that standard which provides:

> (3)  A definition of disability providing that for the first twelve (12)
> months of  disability, total disability shall be defined as the inability to
> perform the essential  functions of the insured's own occupation.
> Thereafter, it shall mean the inability of the insured to perform the
> essential functions of any occupation for which he or  she is reasonably
> suited by virtue of education, training or experience.

(JF-P ¶ 45.)    Plaintiff presented numerous examples of definitions from insurance companies

similar to or exactly the same as that adopted by the NAIC, and quoted above.[2]

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if,

drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c).  A motion for summary judgment will not be defeated by

the mere existence of some disputed facts, but will be defeated when there is a genuine issue of

material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining

whether the dispute is genuine, the court's function is not to weigh the evidence or to determine

---

[2]  See JF-P ¶ 46; Life Insurance Company of North America (definition, at 5)(JF-P Ex. H); Reliance Standard Life Insurance Policy (definition, at 2.1)(JF-P Ex. I);  American International Life Assurance Company (definition, at 4)(JF-P Ex.  J); PNC Bank (§ 5.03)(JF-P Ex. K); Balboa Life Insurance Company (definition, at 2)(JF-P Ex. L); Balboa Life Insurance Company (definition, at 2)(JF-P Ex. M); Household Life Insurance Company (definition, at 3)(JF-P Ex. N); Unum Provident (definition, at 15)(JF-P Ex. O); Minnesota Mutual Life (definition, Bates no. 001441)(JF-P Ex. P).

the truth of the matter, but only to determine whether the evidence of record is such that a

reasonable jury could return a verdict for the nonmoving party.  (Id. at 249.)

### *Discussion*

### I.  Plaintiff's Motion for Partial Summary Judgment Concerning Policy Interpretation

Plaintiff filed a motion for partial summary judgment seeking the court's

interpretation of a clause in the insurance contract defining "Total Disability."  The

parties agree that Pennsylvania law applies.

### A.  Interpreting Insurance Contracts under Pennsylvania Law

"The basic principles of law governing insurance policy interpretation are well-settled in

Pennsylvania."  Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159,

171 (3d Cir. 2006) (citing  E. Associated Coal Corp. v. Aetna Cas. & Surety Co., 632 F.2d 1068,

1075 (3d Cir.1980)).  "The goal of interpreting an insurance policy, like the goal of interpreting

any other contract, is to determine the intent of the parties."  Id.  "It begins where it must – the

language of the policy."  Id.  (citing Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d

100, 106 (Pa. 1999) ("The polestar of our inquiry . . . is the language of the insurance policy.")).

Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for

the court.  Lexington Ins. v. Western Penn. Hosp., 423 F.3d 318, 323 (3d Cir. 2005).  Where the

language of the insurance contract is clear and unambiguous, a court is required to give effect to

that language; where, however, a provision of a policy is ambiguous, the policy provision is to be

construed in favor of the insured and against the insurer, the drafter of the agreement.  Lexington

Ins., 423 F.3d at 323 (quoting Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n Ins.

Co., 517 A.2d 910, 913 (Pa. 1986)).  "Contractual language is ambiguous 'if it is reasonably

susceptible of different constructions and capable of being understood in more than one sense.'"

Regents of Mercersburg College, 458 F.3d at 172 (quoting Hutchison v. Sunbeam Coal Co., 519

A.2d 385, 390 (Pa. 1986); citing Madison Constr. Co., 735 A.2d at 106)).  "Courts should not,

however, distort the meaning of the language or strain to find an ambiguity."  Steuart v.

McChesney, 444 A.2d 659, 663 (Pa. 1982)); USX Corp. v. Liberty Mutual Ins. Co., 444 F.3d

192, 198 (3d Cir. 2006) ("[I]n Pennsylvania, and no doubt elsewhere, '[c]lear policy language . . .

is to be given effect, and courts should not torture the language to create ambiguities but should

read the policy provisions to avoid it.'") (quoting Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3

(3d Cir. 1998)).

### B.  Application of Pennsylvania Law

The policy language in question in this case is the definition of "total disability".  The

relevant portion reads as follows:

> TOTAL DISABILITY during the first 12 consecutive months of
> disability means that a member is not able to perform substantially
> all of the duties of his occupation on the date his disability
> commenced because of a medically determined sickness or
> accidental bodily injury.  After the first 12 consecutive months of
> disability, the definition changes and requires the member to be
> unable to perform any of the duties of his occupation or any
> occupation for which he is reasonably qualified by education,
> training or experience.

Both parties agree that the definition of "total disability" changes after the first 12

consecutive months.  Plaintiff argues that after the first 12 consecutive months, the insured

qualifies as totally disabled if he can show either that he is unable to perform the duties of his

occupation or that he is unable to perform the duties of any occupation for which he is reasonably qualified by education, training or experience.  Meyer contends that "the use of the word 'or' between the phrases 'any duties of his occupation' and 'any occupation for which he is reasonably qualified' logically signifies the presence of two alternatives, either one of which may independently serve as a basis for disability." (Pl.'s Br. at 2.)  Meyer argues that the plain meaning of the word "or" necessitates his interpretation of the definition, and to construe it in the manner supported by the defendant would amount to changing  "or" to "and" which is not permitted under Pennsylvania law.  In support of his interpretation, Meyer cites several dictionary definitions as well as some case law defining "or" as a disjunctive meant to provide an alternative.  Meyer asserts that the policy language in question is unambiguous, and urges the court to adopt his interpretation.

Defendant, on the other hand, argues that "total disability" shifts after the first 12 consecutive months of disability from an insured not being able to perform the duties of his own occupation to an insured not being able to perform the duties of any occupation.  CUNA contends that it intended the language in the policy to create a shift from an "own occupation" definition of disability to an "any occupation" definition after twelve months consistent with industry standards.  CUNA claims that the phrase "or any occupation for which he is reasonably qualified by education, training or experience," when taken in the context of the total disability definition should be read as, "and any occupation for which he is reasonably qualified by education, training or experience."  In support of its interpretation CUNA points to case law that allows the words "or" and "and" to be construed interchangeably in interpreting insurance

14

contracts or statutes.  CUNA claims that its interpretation is unambiguous, because plaintiff's proposed interpretation is unreasonable.

First CUNA contends that plaintiff's interpretation is unreasonable because it is contrary to Pennsylvania law.  CUNA claims that shifting from an "own occupation" definition to an "any occupation" definition of total disability after twelve months in a credit insurance contract is mandated by regulation at 31 PA. CODE § 73.11(4) (1971).  Plaintiff's interpretation does not shift the definition of total disability from an "own occupation" standard to an "any occupation" standard.  CUNA concludes that plaintiff's interpretation can not be endorsed, because it violates this regulation.

This court disagrees.  A closer look at the regulation reveals that the regulation is a list of attributes in a credit insurance contract for the policy to qualify for "premium rate standards."[3] Id.  The regulation provides in relevant part:

> The following premium rate standards are applicable to policies providing credit accident and health coverage which are issued with or without evidence of insurability offered to all debtors and containing:
>
> ***
>
> (4) No definition of disability which defines disability during the first 12 months of disability as inability to perform any occupation. The definition of disability during such period must be related to the occupation of the borrower at the time such disability occurs.  Thereafter, disability will be defined as the inability to perform any  gainful occupation for which the borrower is reasonably fitted by education, training and experience.

---

[3] What were referred to as premium rate standards in 1971 are now referred to as "*primae facie* rates."  See 31 PA. CODE § 73.107(b) (2006).

31 Pa. Code § 73.11(4) (1971)(emphasis added).[4]

Defendant's own witness confirms that an insurance company can alter the terms if they do not want to charge the "*primae facie* rates." Gary Fagg ("Fagg"), consulting actuary for CUNA, testified that this regulation merely requires that an insurer employ the shifting definition if it wishes to charge the "*prima facie* rates." (Fagg Dep. 60:9-61:13.)   Fagg stated  that an insurer was free to provide a non-shifting policy, and "I'm sure one of them probably does." (Id.) Additionally, the regulation in issue is not focused on requiring coverage to shift to an "any occupation" definition after twelve months to benefit the insurer. Rather, it is focused on ensuring that the "own occupation" definition is used for at least the first twelve months to benefit the insured. Plaintiff's interpretation of "total disability" would have the effect of expanding coverage for the insured. Even assuming that 31 Pa. Code § 73.11 requires what CUNA claims it does, Pennsylvania law is well settled that "[i]n the insurance setting, a policy of insurance may expand, but cannot reduce, coverage that is mandated by statute". Burstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 220 (Pa. 2002).  Therefore, plaintiff's interpretation of the policy is not in violation of Pennsylvania law.

---

[4] It should be noted that 31 Pa. Code § 73.11(4) (1971) was amended in 1998 as 31 Pa. Code § 73.107(a)(5) (1998).  Defendant incorrectly characterizes this amendment as a relocation of the regulation, and claims it is identical to 31 Pa. Code § 73.11(4) (1971).  The new regulation, however, is concerned with the proof required for disability, and not the definition of total disability.  Additionally, the new regulation clearly allows for alternate benefit plans that differ from the features enumerated in section 73.107(a)(1-7). See 31 Pa. Code § 73.107(b) (2006).  The lead plaintiff bought his policy in 1999 so the 1998 regulation would apply to his policy and defendant's argument that the parties were bound by the terms of the 1971 regulation would be incorrect.  Nevertheless, since the 1971 regulation was in effect when some of the class members bought their insurance policies, the court will analyze the 1971 regulation to determine if plaintiff's interpretation of "total disability" is prohibited by law.

Next, CUNA contends that plaintiff's interpretation is unreasonable, because it is not consistent with industry practice.  CUNA notes that the NAIC has adopted model regulations and policy language which contains a shifting definition of disability after twelve months from an "own occupation" standard to an "any occupation standard."  (JF-D ¶ 25.)  CUNA states that most other insurance companies use the shifting definition and use language similar to that adopted by the NAIC.  No other policy presented by either party, however, used the exact language of the policy in question in this case.  The issue of industry standards is irrelevant to this debate.  While the industry standard may have some bearing on CUNA's intentions and interpretation of the contract, it does nothing to inform the court about the plaintiff's intentions. The plaintiff is simply a consumer and not a credit insurance or disability insider.  There is no reason for this court to conclude that plaintiff was somehow informed of or knew about the insurance industry standards defining disability.  If anything, the industry standards help to show that the policy language in question is ambiguous, because defendant did not follow the model language.  Plaintiff's counsel correctly points out that the NAIC language is much more precise and unlikely to cause confusion or misunderstanding than the language used in the policy at question.

Finally, CUNA asserts that plaintiff's interpretation is unreasonable by citing several decisions purporting to construe the clause in a different manner. CUNA cites the following decisions: Cook v. Liberty Life Assur. Co. of Boston, 320 F.3d 11, 14 (1st Cir. 2003); Potter v. Liberty Life Assur. Co. of Boston, 132 F.App'x 253, 257-58 (11th Cir. 2005); Sweno v. Liberty Life Assur. Co. of Boston, No. CIV02-376, 2003 WL 1572006, *4 (D. Minn. Mar. 10, 2003). CUNA argues that all of these courts found that Liberty Life's definition provided any

17

occupation coverage after 24 months.  None of those courts, however, actually <u>found</u> that the definition provided any occupation coverage, because they were not charged with interpreting the definition of total disability.  Additionally, the definition of disability used in the policy at question in those decisions contained <u>significantly</u> different language than the present case.

CUNA also cites <u>Hammond v. Fidelty & Guaranty Life Insurance Co.</u>, 965 F.2d 428 (7th Cir. 1992), claiming the United States Court of Appeals for the Seventh Circuit found that similar language provided any occupation coverage.  The language of the policy issued in <u>Hammond</u>, however, was not identical to the language in this case, and <u>Hammond</u> involved a factual determination whether or not a person was disabled, with no challenge to  the meaning of the policy definition. <u>Id.</u>  Additionally, the definition of "total  disability" in the life insurance policy at issue in <u>Hammond</u>, did not contain  any shift in meaning based upon time limitations. <u>Id</u>. at 428-29.

CUNA also cites <u>Migliaro v. IBM Long-Term Disability Plan</u>, 231 F.Supp. 1167 (M.D. Fla.  2002), arguing that the court in <u>Magliaro</u> found that a shifting  definition of disability employed by Metropolitan Life provided "any occupation" coverage.  <u>Magliaro</u>, however, is also distinguishable because it does not use the same language in question in this case.  <u>Magliaro</u> was not concerned with the definition of "total disability," but rather focused on a determination whether Metropolitan Life's decision to deny disability benefits was unreasonable.  <u>Id.</u> at 1171-72, 1180.  Although some of the decisions cited by defendant contained language similar to the language of the policy, none of the decisions touched on the central issue this court must decide, i.e. whether the definition of total disability used by CUNA in the policy is ambiguous.

18

The definition of "total disability" in the policy is wrought with ambiguity as that term is colloquially understood.  For this court, however,  to find legally that the definition is ambiguous under the law of Pennsylvania, there must be at least two different <u>reasonable</u> interpretations. <u>Regents of Mercersburg College</u>, 458 F.3d at 172.  Although CUNA's argument is not convincing that the definition was unambiguous,  the interpretation advanced by CUNA is certainly reasonable.  One does not need to  "torture the language" to support CUNA's interpretation.

Similarly, plaintiff's argument that his interpretation was unambiguous is not convincing. Taken in the context of the overall policy, and applying the plain meaning of words and phrases, the plaintiff's interpretation, however,  is reasonable.  The common sense or ordinary meaning of the word "or" definitely suggests a choice between two alternatives.  It is easy  for this court to look at the definition of "total disability" in CUNA's credit insurance contract and see how a person of ordinary intelligence, like Meyer, could interpret it to mean: disability  after twelve months includes <u>either</u> the inability to perform any of your own occupation's functions, <u>or</u> the inability to perform the functions of any job.

Although this court agrees with defendant that its interpretation of "total disability" is more reasonable than that of plaintiff, the court may not pick the most reasonable interpretation. Rather, in the insurance context, if there are two reasonable interpretations the court must choose not the best interpretation, but the interpretation favoring the insured.  In order to find an ambiguity there simply needs to be one or more reasonable interpretations like the situation here. Since there are two reasonable interpretations, the court concludes that the policy clause in

question is ambiguous.  Under those circumstances, this court must construe the  clause in favor

of the insured, the plaintiff.  <u>Lexington Ins.</u>, 423 F.3d at 323.   Partial summary judgment will be

granted in favor of plaintiff with respect to the definition of "total disability" in the policy and

thus any claimant who meets the "own occupation" standard or the "any occupation" standard

will be totally disabled within the meaning of the policy.

## II.  Defendant's Motion for Summary Judgment

### A.  Count two - breach of contract

Having granted plaintiff's motion for partial summary judgment, defendant's motion for

summary judgment on plaintiff's breach of contract claim must be denied.  The court interpreted

"total disability" in the insurance contract to include the inability to return to the pre-disability

occupation.  Defendant is liable for breaching the contract for terminating the benefits of any

class member who could not return to his time of injury job.  There is sufficient evidence of

record to create a material question of fact for the fact finder as to the remaining issues under the

breach of contract claim, namely (1) which of the potential members is actually a member of the

class, and (2) what are the damages for each class member.

### B.  Count four - UTPCPL

Plaintiff asserts that defendant's actions violated the UTPCPL. The UTPCPL forbids, in

part, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce." <u>Id</u>. § 201-3.  "Unfair methods of competition" and "unfair or deceptive

trade practices" are defined under the act as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Id. § 201-2(4)(xxi).

An insurer's mere refusal to pay a claim constitutes nonfeasance and is not actionable under the UTPCPL. While misfeasance or malfeasance - the improper performance of a contractual obligation under the insurance policy - raises a claim under the UTPCPL, Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995), nonfeasance - such as the improper refusal to act, or, in the context of insurance claims, the refusal by the insurer to pay a claim under the policy - is insufficient standing alone to state a claim under the act. Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 604 (Pa. 1988).

In this case, plaintiff alleges not only that defendant refused to pay benefits as required under the policy, but that it also "made untrue, deceptive or misleading representations regarding the coverage before and/or after claims were made by claimants entitled to coverage and benefits." Pl.'s Compl. ¶ 38. In order to prove this claim Meyer must show not only that the insurer's refusal to pay amounted to more than nonfeasance (by showing that CUNA engaged in deceptive or misleading representations), but also that plaintiff justifiably relied on those misrepresentations. Toy v. Metropolitan Life Ins. Co., 928 A.2d 186 (Pa. 2007).

Plaintiff failed to adduce any evidence that CUNA's actions constituted malfeasance. Plaintiff presented no evidence that CUNA sold the insurance policies to the class members by promising an "own occupation" definition of total disability or misled class members about the scope of the coverage. Additionally plaintiff adduced no evidence that any class member justifiably relied on any misrepresentation made by defendant. This court concludes that the

evidence of record in this case does not support plaintiff's UTPCPL claim. In the context of the

UTPCPL, based upon the evidence of record, a reasonable jury could not find defendant's actions

constituted malfeasance and thus a jury could not render a verdict for plaintiff on this claim.

Summary judgment will be granted in favor of defendant with respect to the UTPCPL claim.

### C.  Count five  - Pennsylvania's bad faith insurance statute

Plaintiff claims that defendant's actions violated Section 8371, Pennsylvania's bad faith

insurance statute.  That section provides:

> In an action arising under an insurance policy, if the court finds that the insurer
> has acted in bad faith toward the insured, the court may take all of the following
> actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made
> by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

Id.  Section 8371 leaves undefined the phrase "bad faith toward the insured," but courts

subsequently interpreted the phrase to consist of at least one of the following: (1) a frivolous or

unfounded refusal to pay; (2) a failure to investigate into the facts; or (3) a failure to

communicate with the insured.  Livornese v. Medical Protective Co., 219 F.Supp.2d 645, 647

(E.D. Pa. 2002); see Frog, Switch Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d

Cir. 1999).  Section 8371 is broadly construed to effectuate the purpose of the statute.  Krisa v.

Equitable Life Assur. Soc., 109 F.Supp.2d 316, 318 (M.D. Pa. 2000).

Liability under Section 8371 may be established where the plaintiff demonstrates that "(1)

the defendant did not have a reasonable basis for denying benefits under the policy and (2) that

[the] defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." Terletsky v. Prudential Pro. & Cas. Ins. Co., 649 A.2d 680 (Pa. Super. Ct. 1994); see Klinger v. State Farm Mut. Auto Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997). Courts apply an objective analysis to the first prong of the liability test: "If there is a reasonable basis for denying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law be bad faith." Williams v. Hartford Cas. Ins. Co., 83 F.Supp.2d 567, 574 (E.D. Pa. 2000). Thus, *any* reasonable basis for the insurer's conduct is sufficient to demonstrate that the insurer did not act in bad faith under Section 8371. See Livornese, 219 F.Supp.2d at 648.

The second prong requires that the defendant "knew or recklessly disregarded its lack of reasonable basis in denying the claim." Although it is unnecessary for plaintiff to demonstrate that an insurer's refusal to pay amounts to fraud, Williams v. Nationwide Mut. Ins.Co., 750 A.2d 881, 887 (Pa. Super. Ct. 2000), facts demonstrating "mere negligence on the part of the insurer" are insufficient to sustain a bad faith claim. Williams v. Hartford Cas. Ins. Co., 83 F.Supp.2d at 571. For purposes of the statute, "bad faith" conduct "imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will." Williams v. Nationwide Mut. Ins. Co., 750 A.2d at 887.

In this case, defendant relied on its interpretation of the definition of "total disability" in the insurance contract in denying plaintiff's claims. This court found that defendant's interpretation of the ambiguous contract was reasonable. Additionally, defendant noted several decisions in which a court held that an insured's reasonable incorrect interpretation of an insurance policy does not necessarily constitute bad faith. See Bostick v. ITT Hartford Group,

23

Inc., 56 F.Supp.2d 580, 587 (E.D.Pa. 1999); see also Williams v. Hartford Cas. Ins. Co., 83

F.Supp.2d 567 (reasonable basis for delaying resolution of a claim does not constitute bad faith).

Nevertheless, Meyer contends that CUNA acted in bad faith because it (1) knew that the

"total disability" clause in the insurance contract was ambiguous, (2) knew that Pennsylvania law

requires an ambiguous clause to be interpreted in favor of the insured, and (3) still refused to

grant benefits consistent with insured's interpretation.In support of his position that CUNA knew

of the ambiguity of the "total disability" definition, Meyer points to several pieces of evidence.

First, he notes documentation in several member files of telephone calls or letters either

complaining of the shifting nature of the "total disability" definition or asking for an explanation.

The documentation included a telephone call by class member Jennifer  Hall in which an

employee  of CUNA needed to explain to her how the definition of total disability changes at the

year point, Pl.'s Br. Ex. Q, as well as a letter from class member Richard E. Miller, complaining

about his benefits being discontinued, even though he was unable to return to his occupation as a

chief of police.  (Pl.'s Br. Ex. S.)

Next, plaintiff points to the deposition of the defendant's corporate representative, Statz.

Statz testified that "It is typical that case examiners will explain policy provisions . . ." and

"specifically the definition of disability." Statz Dep. at 67-68.  Statz acknowledged that several

times he had to explain the shifting definition of disability after a year to an insured.  Id.

Finally plaintiff points to the denial letters sent by CUNA to the class members which

contained the following paragraph with respect to coverage:

> The Credit Disability Insurance contract contains a
> definition of total disability.  According to this definition, total
> disability during the initial 12 consecutive months of  disability

> means you are not able to perform the duties of your occupation. After the initial 12 consecutive months of disability, the definition changes to state that you must be disabled from performing any occupation for which you are reasonably qualified by education, training or experience.

Pl.'s Br. Ex. A.  Importantly, this is not the language contained in the policy itself.  Plaintiff alleges that defendant deliberately elected to exclude the disputed policy language "your own occupation or" when describing the second period of disability, because they knew the policy language created an ambiguity.  Nonetheless, this court has concluded that defendant's interpretation of the definition of "total disability" was not only reasonable, but more reasonable than plaintiff's interpretation.  Plaintiff also adduced no evidence of a dishonest purpose or ill will on the part of the insurer that would constitute bad faith under the statute.  Under those circumstances, a reasonable jury could not find bad faith on the part of defendant.  Since no reasonable jury could render a verdict for plaintiff on this claim, summary judgment will be granted in favor of defendant.

### D.  Count six - Pennsylvania's common law covenant of good faith and fair dealing

The amended complaint alleges that plaintiff and defendant entered into a contractual arrangement whereby defendant agreed to provide plaintiff with disability benefits in the event plaintiff became disabled.  Pl.'s Am. Compl. ¶ 43.  Plaintiff further alleges that, "[i]n refusing to provide the agreed upon disability benefits, the Defendant undertook actions which undermined the Plaintiff's right to collect his benefits, i.e. refusing to honor its obligations."  Id. ¶ 45.  Plaintiff contends that defendant breached the implied covenant of good faith and fair dealing by

failing to provide plaintiff the benefits he was owed under the insurance policy, in spite of ambiguous language in the policy. Id. ¶¶ 46-48. Defendant contends that plaintiff is precluded from bringing a claim for the breach of the implied covenant of good faith and fair dealing because that claim must be prosecuted solely as a breach of contract claim.

This court agrees that Pennsylvania law does not recognize a separate claim in *tort* for the breach of the implied covenant of good faith and fair dealing. D'Ambrosio v. Pa. Nat. Mut. Cas. Inc. Co., 431 A.2d 966 (Pa. 1981). Pennsylvania, however, recognizes a *contract* cause of action for breach of the implied covenant of good faith and fair dealing. Gray v. Nationwide Mutual Ins. Co., 223 A.2d 8, 11 (Pa. 1966). In Gray, the Pennsylvania Supreme Court stated that the insurer's "breach of its obligation gave [the insured] a right of action against it for the amount of judgment against him in excess of the limits of the policy coverage." Id. at 9. Unlike a simple breach of contract action seeking to recover the benefits due under the policy, the plaintiff in Gray was permitted to seek compensatory damages in excess of the policy limits based upon his claim for breach of the implied covenant of good faith and fair dealing.

The next issue is whether a breach of the implied duty of good faith and fair dealing claim merges with plaintiff's underlying breach of contract claim. A party is generally precluded from maintaining a claim for the breach of the implied duty of good faith and fair dealing separate and distinct from the underlying breach of contract claim. In JHE, Inc. v. SEPTA, No. 1790, 2002 WL 1018941, at *5 (Phila. C.P. May 17, 2002) the court stated:

> [T]he implied covenant of good faith does not allow for a claim separate and distinct from a breach of contract claim. Rather, a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself.

Id.; see also, Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000);

Commonwealth v. BASF Corp., No. 3127, 2001 WL 1807788, at *13 (Phila. C.P. 2001) ("the

duty of good faith, whether express or implied in contract, does not create independent

substantive rights nor can it override the express contractual terms"); In re K-Dur Antitrust

Litigation, 338 F.Supp.2d 517, 549 (D.N.J. 2004) ("Although Pennsylvania imposes a duty of

good faith and fair dealing on each party in the performance of contracts, there is no separate

cause of action for breach of these duties under Pennsylvania law.") (citations omitted); Blue

Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F.Supp.2d 394, 400-01 (E.D.

Pa. 2002) ("Pennsylvania law does not recognize a separate claim for breach of implied covenant

of good faith and fair dealing.").

Despite this general proposition, however, courts have recognized that in limited

circumstances – specifically including the insurer/insured relationship – a plaintiff may be able to

bring an independent contractual claim for breach of a duty of good faith and fair dealing.

Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 154 (Pa.

Super. Ct. 1989) (citing Gray, 223 A.2d 8 ).  In the leading decision cited above for the

proposition that the breach of good faith claim merges with the breach of contract claim, the

court stated: "In an insurance context, where an insured brings a tort or tort-like bad faith claim

against her insurer, some courts have justifiably held that these claims are distinct and separate

from breach of the covenant of good faith."  JHE, Inc., 2002 WL 1018941 at *6 (citing Birth

Center of St. Paul Cos., 787 A.2d 376, 390 (Pa. 2001) (Nigro, J., concurring).

Gray and Birth Center, however, both dealt with third-party claims based upon the

insured's alleged bad faith in refusing to settle a claim within policy limits.  In that situation, the

insurer may be liable in excess of the policy limit, thus permitting compensatory damages in excess of what the insured could receive under a simple breach of contract claim.  This case is distinguishable from both <u>Gray</u> and <u>Birth Center</u>.  This case does not involve a third party, and plaintiff is not alleging contract damages beyond the policy limits.   Therefore, this court finds that plaintiff's claim for breach of the implied covenant of good faith and fair dealing merges with the breach of contract claim.  Defendant's motion for summary judgment will be granted in its favor with respect to count six.

### *Conclusion*

For the reasons set forth above, plaintiff's motion for partial summary judgment (Doc. No. 108) is **GRANTED**.  Defendant's motion for summary judgment (Doc. No. 141) is **GRANTED** in part and **DENIED** in part as follows: with respect to count two - breach of contract, defendant's motion for summary judgment is **DENIED**; with respect to count four - violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, defendant's motion for summary judgment is **GRANTED**; with respect to count five  - violation of Pennsylvania's bad faith insurance statute, defendant's motion for summary judgment is **GRANTED**; and with respect to count six - breach of Pennsylvania's common law covenant of good faith and fair dealing, defendant's motion for summary judgment is **GRANTED**.

By the court,

_____    /s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated: September 28, 2007
cc: counsel of record.